■ In the Matter of Robin L. Norwood, Respondent, v James P. Capone, Appellant. (And Another Related Proceeding.) [790 NYS2d 270]—

---

Peters, J. Appeal from an order of the Family Court of Otsego County (Coccoma, J.), entered September 16, 2003, which, inter alia, granted petitioner's application, in two proceedings pursuant to Family Ct Act articles 6 and 8, to modify a prior order of custody.

Petitioner and respondent are the parents of two sons, Christopher and Anthony (born in 1986 and 1989, respectively), who have special needs. Christopher has Down's syndrome and Anthony has attention deficit hyperactivity disorder. Although the parties, now divorced, originally stipulated to joint custody of the children with physical custody to respondent, an order was entered in April 1999 granting sole custody to respondent. In September 2002, petitioner, having a permanent residence with her husband in Kentucky, sought to modify this order to reinstate the joint custody due to complications she experienced when the children visited with her in Kentucky. However, after speaking with Christopher's teachers and observing the care given by respondent to the children, petitioner amended her petition to seek a transfer of physical custody. She alleged that respondent was not meeting their social, medical, educational and emotional needs. For these reasons, she secured a temporary residence in the Town of Unadilla, Otsego County.[1]

In March 2003, petitioner commenced a family offense petition, pursuant to Family Ct Act article 8, alleging that respondent routinely resorted to physical violence with Anthony. It detailed a recent incident whereby respondent kicked Anthony, placed him in a headlock, and left marks on the child's neck when Anthony attempted to leave the residence. This last event

---

1. While this proceeding was pending, numerous other proceedings were commenced against respondent. In December 2002, the Otsego County Department of Social Services (hereinafter DSS) filed a neglect petition, pursuant to Family Ct Act article 10, which alleged, among other things, that, despite being cautioned by DSS caseworkers, respondent continued to place Christopher, then 16 years old, in the care of Anthony, then 13 years old, even after being aware that Anthony had verbalized suicidal ideations and had threatened to harm himself with a butcher's knife after an altercation with respondent. It further alleged that respondent continued to inflict excessive corporal punishment to discipline the children.

triggered a temporary order of protection by Family Court requiring supervised contact between respondent and the children, with temporary custody of the children transferred to petitioner.

In May 2003, Family Court commenced hearings on the custody and family offense petitions.[2] Testimony was received from numerous witnesses which included the director of Christopher's school, his teacher, Anthony's social worker, his case manager, and a DSS caseworker who was assigned to both children. Family Court awarded physical custody of the children to petitioner and permitted them to relocate to Kentucky; the parties continued to maintain joint custody. The family offense petition was dismissed as was the neglect petition. Respondent appeals.

Despite respondent's contentions, Family Court properly analyzed this modification proceeding to determine whether there was a "sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child[ren]" (*Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903, 903 [1992]; *see Matter of Murray v McLean*, 304 AD2d 899, 899 [2003]; *Matter of Hrusovsky v Benjamin*, 274 AD2d 674, 675 [2000]). Moreover, where, as here, the existing custody arrangement was devised by the parties and not by the court after a plenary trial, the prior custodial placement was entitled to less weight (*see Matter of Murray v McLean, supra* at 899; *Matter of Glaser v McFadden*, 287 AD2d 902, 905 [2001]). Recognizing the obligation of Family Court to have considered a myriad of factors before reaching a conclusion, we find no basis to disturb the determination rendered.

Focusing on the special needs of these children, Family Court reviewed the relative fitness and ability of each parent to provide for the children's intellectual and emotional development, their past performance, parental guidance, and the quality and supervision provided in their respective home environments (*see Matter of Murray v McLean, supra* at 900; *Matter of Hrusovsky v Benjamin, supra* at 675; *Matter of Williams v Williams*, 188 AD2d 906, 907 [1992]). Family Court's assessment of these factors is accorded great deference and, with a sound and substantial basis in the record supporting it, there exists no basis to disturb the determination rendered (*see Matter of Siler v Siler*, 293 AD2d 826, 827 [2002], *appeal dismissed* 98 NY2d 691 [2002]).

Before reviewing the testimony supporting the change in

---

**2.** The parties agreed that the neglect proceeding would be held in abeyance pending the outcome of these proceedings.

custody, we note that as of March 27, 2004, Christopher was no longer a minor, subject to Family Ct Act article 6 (*see* Family Ct Act § 651). Accordingly, all issues raised on appeal concerning his custody are now moot.[3] As to Anthony, numerous witnesses testified about the escalation in violence between him and respondent, necessitating the issuance of a temporary order of protection and supervision of visitation. Anthony's therapist opined that it would be detrimental for him to live with respondent and his case manager believed that counseling services were precipitated by respondent's emotional and physical abuse of him. While in the care of respondent, Anthony was described as emotionally unstable, angry and sad, expressing suicidal ideations. Anthony's school performance was suffering and respondent clearly acknowledged that Anthony no longer wanted to live with him.[4]

These changes supported a modification of the existing custody order. Additional evidence supported the determination that it was in Anthony's best interests to have custody awarded to petitioner. Numerous witnesses described Anthony as happy, content, self-contained and successful in school when he was residing with petitioner. Moreover, petitioner relieved Anthony of the burden of supervising Christopher and, instead, allowed them to engage in age-appropriate behaviors. Petitioner also recognized and pursued needed medical and psychological care and provided a supportive environment, contrary to the atmosphere in respondent's residence. With Family Court reviewing the criminal record of petitioner's husband, along with testimony offered by petitioner and others concerning his character and demeanor, we find that the Family Court properly concluded that no negative presumption would result from his failure to testify. This proof also sufficed to establish that relocation to Kentucky was in Anthony's best interests (*see Matter of Tropea v Tropea*, 87 NY2d 727, 741 [1996]; *Matter of Hrusovsky v Benjamin, supra* at 676; *see also Matter of Bishop v Livingston*, 296 AD2d 602, 603-604 [2002]). Finally considering the testimony adduced during the *Lincoln* hearing, we fail to discern an abuse of discretion.

Having reviewed and rejected respondent's remaining conten-

---

**3.** The record reflects that since the entry of Family Court's order, Christopher's status, as an incapacitated person, has been the subject of another proceeding in Kentucky where both parties are participating.

**4.** Their historical relationship further indicates that they have had periods where Anthony was sent to petitioner due to respondent's inability to deal with Anthony's challenging behaviors. Each time, Anthony had to be returned to respondent because Christopher reacted poorly to their separation.

tions as either unpreserved or without merit, the order is affirmed.

Cardona, P.J., Crew III, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.