■ In the Matter of KARRIE ARMSTRONG, Respondent, v STEVEN C. CROUT, JR., Appellant. [822 NYS2d 654]—

Carpinello, J. Appeal from an order of the Family Court of Schuyler County (Argetsinger, J.), entered April 1, 2005, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

These divorced parties are the joint custodial parents of two boys (born in 1991 and 1995). Respondent has had primary physical custody since the fall of 2000 following an unsuccessful application by petitioner to relocate with them to Texas.[1] Since this order placing the boys with respondent, petitioner has had regular and extensive visitation with them, both in Texas, where they have spent every summer and numerous school vacations, and here in New York.[2] Now at issue is petitioner's August 2004 petition requesting that the boys be placed primarily with her in Texas with liberal visitation to respondent in New York. Following an evidentiary hearing and a *Lincoln* hearing, the petition was granted by Family Court, prompting this appeal.

A party seeking to modify an existing custody order must demonstrate a "sufficient change in circumstances reflecting a

---

1. A determinative factor in denying petitioner's relocation request at that time was the boys' strong ties to their step-family and paternal grandparents.

2. Petitioner traveled to New York between six and seven times per year to see the boys.

real need for change in order to insure the continued best interest[s] of the child[ren]" (*Matter of Mehaffy v Mehaffy*, 23 AD3d 935, 936 [2005], *lv dismissed* 6 NY3d 807 [2006] [internal quotation marks and citations omitted]; *see Matter of Norwood v Capone*, 15 AD3d 790, 792 [2005], *appeal dismissed* 4 NY3d 878 [2005]). Factors to be considered in making such determinations include "the duration of the current arrangement, the parental guidance furnished, the quality of the respective home environments, each parent's past performance, and each parent's ability to provide for and guide the [children's] emotional and intellectual development" (*Matter of Hrusovsky v Benjamin*, 274 AD2d 674, 675 [2000] [citation omitted]). Moreover, a party seeking to relocate must demonstrate by a preponderance of the evidence that it is in the best interests of the children to make such a move (*see Matter of Tropea v Tropea*, 87 NY2d 727, 741 [1996]; *Matter of Smith v Hoover*, 24 AD3d 1096, 1096 [2005]). Relevant factors to consider in relocation cases include "each parent's reason for moving or opposing the move, the relationship between the child and each parent, the impact of the move on the quality and quantity of future contact between the child and the noncustodial parent, and the potential enhancement of the child's and custodial parent's lives" (*Matter of Smith v Hoover, supra* at 1096-1097).

According due deference to Family Court's assessment of the modification and relocation factors, we are satisfied that its decision to both modify custody and permit relocation to Texas has a sound and substantial basis in the record which promotes the boys' best interests (*see Matter of Tropea v Tropea, supra*; *Eschbach v Eschbach*, 56 NY2d 167, 174 [1982]; *Matter of Green v Perry*, 18 AD3d 923, 924 [2005]; *Matter of Norwood v Capone, supra* at 792-793; *Matter of Grathwol v Grathwol*, 285 AD2d 957, 958 [2001]; *Matter of Hrusovsky v Benjamin, supra* at 675-676). Accordingly, we affirm. In granting petitioner's application, Family Court found the stability of her home to be the determinative factor. The court specifically noted, aptly in our view, that the stability of the parties' respective homes "dramatically reversed" since the prior custody order. The record supports this finding.

Respondent confirmed that the boys moved four times following the 2000 order. The stability of their lives really began to deteriorate, however, during the fall of 2003. It was at this time that respondent separated from his then wife (*see* n 1, *supra*) and shortly thereafter moved into the home of his new girlfriend (herself still married) and her two children. Not only did the boys have to change homes and school districts at this time,

they no longer had daily contact with their paternal grandparents, who had always been a constant source of support, financial and otherwise, to them and respondent (*see* n 1, *supra*). Of note, the paternal grandmother opined at the hearing that the boys were not getting sufficient attention from respondent in this new household and were not being treated equally among the other children. The record further reveals that the girlfriend's three-bedroom home is inadequate to sufficiently accommodate the boys as they have to share a bedroom with her son and alternate sleeping on a mattress on the floor.[3]

There was also evidence that respondent was not as diligent as petitioner in attending to the boys' medical and dental needs. While he would take them to a clinic whenever the need arose, he acknowledged that they did not have a regular pediatrician for the first three years they were in his care. He never took them to a dentist and, despite being told by petitioner that one of the boys needed braces and that she carried "premium" dental insurance to cover this expense, he never took the child to an orthodontist. Nor was respondent particularly diligent in following up on their daily school obligations.

With respect to the precise issue of relocation, we note that when petitioner learned of respondent's separation from his wife, she and her husband endeavored to relocate back to New York for the sake of the boys. They placed their Texas home on the market and her husband looked for comparable employment here, to no avail. We note further that both petitioner, a mortgage loan coordinator, and her husband, a project manager at a telecommunications company, have steady employment in Texas with a combined annual income in excess of $90,000. They have no other children and live in a 2,200 square-foot home in a suburban neighborhood where the boys have their own bedrooms, established friendships and access to a very good school district. Moreover, petitioner has agreed to forego any child support from respondent and is committed to financing all travel expenses for the boys' visitation in New York. She has even agreed to permit respondent to stay in her Texas home for additional visitation outside the otherwise set schedule.

In sum, Family Court's conclusions were based upon a thorough examination and careful balancing of all relevant factors to ascertain the best interests of these boys. While we agree with the finding that both parents are fit, the need for greater stability in the boys' lives militates in favor of awarding physical custody to petitioner in Texas (*see Matter of Smith v Hoover,*

---

**3.** Respondent has two other children who are also at the house every weekend.

*supra*; *Matter of Green v Perry, supra*; *Munson v Lippman*, 2 AD3d 1252, 1253 [2003]; *Matter of Hrusovsky v Benjamin, supra*). Moreover, although not conclusive, the decision is in accord with the position advanced by the Law Guardian at the hearing and on appeal (*see Matter of Smith v Hoover, supra* at 1098; *Matter of Goodale v Lebrun*, 307 AD2d 397, 398 [2003]), and we have further considered the testimony adduced during the *Lincoln* hearing (*see Matter of Norwood v Capone*, 15 AD3d 790, 793 [2005], *supra*).

Crew III, J.P., Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.