■ YOLANDA R., Appellant, v EUGENE I. G., Respondent. [831 NYS2d 387]—

Order, Family Court, Bronx County (Marian R. Shelton, J.), entered March 4, 2005, which dismissed the petition for relocation of the parties' three children to Atlanta, Georgia, unanimously reversed, on the law and facts, without costs, the petition reinstated and the matter remanded for a de novo hearing before a new judge on whether the proposed relocation would serve the children's best interests.

After relocating from the Bronx to Atlanta, Georgia and residing there with her children for 18 months, the mother filed the

instant petition dated March 18, 2003 seeking judicial approval of the relocation and modification of the respondent father's visitation rights granted pursuant to a prior order.[1]

At the conclusion of a hearing which continued over the course of five months, Family Court on August 4, 2004 issued an oral decision[2] dismissing the mother's petition *with prejudice*. The court concluded that the mother had failed to demonstrate that the move to Atlanta was in the children's best interest and that the children's need to foster a daily, ongoing relationship with their father outweighed any benefit presented by the mother as justification for the move.

It is well established that in reviewing relocation and other custody issues, deference is to be accorded to the determination rendered by the factfinder, unless it lacks a sound and substantial basis in the record (*see Miller v Pipia*, 297 AD2d 362, 364 [2002]). This general rule is based upon the rationale that the factfinder is best suited to observe the demeanor of the witnesses and measure their credibility. Here, however, we conclude that the deference generally accorded the factfinder is not warranted (*see id.*).

In reviewing the proceedings below it is difficult to ignore certain undisputed facts, which are in any case well-documented in the record. First, in 1997 the father left the mother and the apartment the family shared, and since that time the mother has assumed complete responsibility for their three children's upbringing.[3] The mother has been the primary care giver, addressing the children's educational, emotional and health related needs while receiving little assistance from the father (*cf. Salichs v James*, 268 AD2d 168 [2000]). The father, we note, has never sought custody, either because he was unable or unwilling, and has repeatedly failed to avail himself of more extended visitation with the children even when offered the opportunity.

---

1. In 1997, the father initially only sought visitation rights with one of the children. No reason has been given for why he did not seek visitation with the other two children. In September 2002, the mother filed a petition for custody indicating that she intended to move the children to Atlanta. As a result of this petition, the father filed a violation petition in December 2002. These petitions resulted in a referee's order dated February 27, 2002 which directed that alternate weekend visitation with the father continue and that the children's residence could not be moved from the New York City area.

2. This decision was later reduced to a written order dated February 9, 2005 and amended on April 5, 2005.

3. While all concede that respondent is the biological father of all three children, he has not sought an order of filiation as to Alex, and to date, has not been judicially declared his father.

Second, when the mother moved to Atlanta and purchased a home for her and her three children, the father took no action to seek their return.[4] The children were living in Atlanta with their mother for more than 17 months before the father filed a formal complaint about their relocation, and that was done only after the mother filed her first petition seeking permission to relocate.

Third, while the children lived in the Bronx, their apartment building was the site of a number of violent incidents including one, and perhaps as many as three, homicides, and one of the children was subjected to a series of assaults while attending school. While the father did not dispute that these incidents occurred, Family Court summarily rejected them as a reasonable basis for the mother's belief that the children's safety was at risk if they continued to live in this area.

Fourth, Family Court appeared to ignore the fact that one of the reasons why petitioner sought to move to Atlanta was the substantial financial and emotional assistance she received from her mother and other close family members who lived in the area. This source of support, tied to petitioner's presence in Atlanta, should not have been discounted without discussion by Family Court (*see Heisler v Heisler*, 30 AD3d 321 [2006]).

Yet, while these facts are compelling, the record below simply does not provide enough information to support an informed decision as to whether relocation to Atlanta is in the children's best interests. Throughout the hearing, Family Court appeared to focus its attention on ancillary issues—such as the financial circumstances surrounding the mother's purchase of a home in Atlanta—issues which provide little assistance in evaluating whether the move would result in an outcome that was "most likely to serve the best interests of the child[ren]" (*Matter of Tropea v Tropea*, 87 NY2d 727, 739 [1996]) and rejected, or failed to take appropriate measures to obtain, evidence essential to the relocation issue. For example, the mother in verification of her claim that the children—all of whom are in special education programs—were doing well in school in Atlanta, sought to admit into evidence at the hearing part of a school transcript. Family Court refused this proffer and failed to order psychological evaluations of the children, which could have provided valuable insight as to how the children were faring in Atlanta. Nor did the court interview the children despite being advised by the Law Guardians on several occasions during these proceed-

---

4. The parties dispute whether the father consented to the move.

ings that the children had all expressed the desire to move to Atlanta with their mother.[5]

Obviously, a law guardian's recommendation regarding an issue pending in Family Court is not controlling, but given the unique nature of a law guardian's relationship with his or her client, it is one that deserved serious consideration (*see Matter of Armstrong v Crout*, 33 AD3d 1079, 1082 [2006]). Here, Family Court evidently chose to ignore the fact that the Law Guardians strongly supported the petition and have taken the position that the children's relocation to Atlanta with their mother was in their best interests.

The record simply does not speak to, nor does it provide any detailed analysis of the children's daily activities and how they would be affected by relocation to Atlanta, a necessity in a best interests analysis in this matter. As a result, this proceeding must be remanded to Family Court for a new hearing that will adequately address all of these issues and give the parties a full and fair opportunity to set forth their positions in regard to the issues raised by the petition.

While this Court does not share the Law Guardians' view that Family Court was biased against the mother and that this bias affected the manner in which it conducted this hearing, it would appear to be in everyone's best interest that a de novo hearing be held before another judge. Concur—Tom, J.P., Andrias, Friedman, Catterson and Kavanagh, JJ.

---

5. The Children's Law Center was initially assigned by Family Court to represent all three children. However, when it appeared that a conflict might exist, a separate law guardian was assigned to represent Alex.