■ TIMOTHY M. SONBUCHNER, Appellant, v LAKSHMI SWAMY SONBUCHNER, Respondent. [947 NYS2d 80]—

Order, Supreme Court, Bronx County (Robert E. Torres, J.), entered August 9, 2011, which, after a nonjury trial, to the extent appealed from as limited by the briefs, awarded defendant sole custody of the subject child, permitted defendant to relocate with the child to Connecticut and then North Carolina, and awarded defendant child support and counsel fees, modified, on the law and the facts, to vacate the awards of counsel fees and child support, to remand the matter for a proper determination of child support pursuant to all applicable provisions of Domestic Relations Law § 240 (1-b), and otherwise affirmed, without costs.

The court's determination that it was in the best interests of the child to grant defendant sole custody and permission to relocate has a sound and substantial basis in the record (see Matter of Tropea v Tropea, 87 NY2d 727, 741 [1996]; Eschbach v Eschbach, 56 NY2d 167, 174 [1982]). Indeed, the record shows that defendant was the child's primary caregiver, that her decisions centered around the child, and that she would continue to foster a relationship between plaintiff and the child (see Matter of James Joseph M. v Rosana R., 32 AD3d 725, 726 [2006], lv denied 7 NY3d 717 [2006]). The court considered all of the proof and the relevant factors (see Eschbach, 56 NY2d at 171-173; Tropea, 87 NY2d at 740-741), and there is no basis for disturbing its findings (see Matter of Alaire K.G. v Anthony P.G., 86 AD3d 216, 220 [2011]).

The question of whether defendant should be allowed to relocate to Connecticut is essentially moot because she will be moving to North Carolina shortly. The testimony established that defendant is pursuing postgraduate medical clinical training, and has been matched with a residency program located in North Carolina; defendant has no control over where she will be placed. Although her move to North Carolina undoubtedly will have an impact on plaintiff's visitation, the court properly allowed defendant to relocate because she has been the primary custodial parent, is moving to ensure that she can earn a living wage to help support the child, and is prepared to ensure that plaintiff continues to have access to the child. The court has not yet ruled on the visitation schedule that will be in place following the move, and any diminution of regular in-person contact can be addressed in a visitation order that provides for phone or Skype access following the move.

During the direct examination of the forensic expert, the forensic report was introduced into evidence, and plaintiff, who was proceeding pro se, had access to it before his cross-examination. On appeal, plaintiff argues that the court improperly prevented him from reviewing the report in advance of the forensic expert's direct testimony. Although the court erred in not allowing plaintiff to read the report before the expert testified, plaintiff had an opportunity when he was represented by counsel at an earlier point in the case to review the report with counsel. He also had an opportunity, long before the trial commenced, to review the report with the court-appointed social worker in the case.

The record shows that plaintiff questioned the forensic expert about a number of issues that were covered in the report. Most of the expert's testimony turned on his recollection of his numerous interviews with the parties and his opinion as to the parties' parental fitness, and plaintiff had an opportunity to cross-examine him about those opinions. The court's reliance on the expert's testimony, as opposed to the report, is apparent from the fact that the court's decision cites to specific pages of that testimony. Plaintiff also was aware of the issues he had discussed during his interviews with the expert, and many of those issues were explored by plaintiff on cross-examination. The evidence about defendant's strong bond and parenting history with the child was substantial, and the court's decision on custody and relocation has ample record support. Thus, any error in not allowing plaintiff access to the report in advance was harmless, and provides no basis for reversal (see *Ekstra v Ekstra,* 78 AD3d 990, 991 [2010]; *Matter of Anderson v Harris,* 73 AD3d 456, 457 [2010]).

We nonetheless reiterate, as we have previously, that counsel and pro se litigants should be given access to the forensic report under the same conditions (see *Matter of Isidro A.-M. v Mirta A.,* 74 AD3d 673 [2010]). Because defendant's attorney had a copy of the report, the court should have given the report to pro se plaintiff, even if the court set some limits on both parties' use, such as requiring that the report not be copied or requiring that the parties take notes from it while in the courthouse.

There is no merit to plaintiff's contention that he was deprived of the opportunity to present evidence at trial. Although the court could have given plaintiff a little more time and latitude because he was pro se, the court permitted plaintiff to testify in narrative form, to introduce exhibits during his testimony, and to cross-examine witnesses.

The record below is insufficient to determine whether the

court's award of child support was unjust or inappropriate (*see* Domestic Relations Law § 240 [1-b] [f]). The child support award fails to specify any dollar amounts, and simply directs plaintiff to pay "17% of his current salary based on his current pay stubs and income tax return," as well as one half of child care expenses, unreimbursed medical bills and health insurance premiums. Thus, the court failed to follow the specific steps set forth in Domestic Relations Law § 240 (1-b). In particular, the court's decision contains no discussion of the parties' income and deductions; nor is there any calculation of the combined parental income or the parties' pro rata share. Furthermore, the court failed to abide by the direction of Domestic Relations Law § 240 (1-b) (c) (4) to determine the reasonable cost of child care expenses and separately state each party's pro rata share of those expenses. Thus, this matter must be remanded for a proper determination of plaintiff's child support obligation pursuant to all applicable provisions of Domestic Relations Law § 240 (1-b), including a determination to whether the calculated amount of support is unjust or inappropriate (*see* Domestic Relations Law § 240 [1-b] [f]; *Kent v Kent*, 291 AD2d 258 [2002]).

Plaintiff should not be required to pay defendant's counsel fees. Based on the parties' testimony at the time of the trial, their incomes were comparable (*see Cvern v Cvern*, 198 AD2d 197, 198 [1993]), and defendant has not shown that plaintiff has the resources to pay her fees (*see Bzomowski v Rollin*, 238 AD2d 298, 298 [1997]). Indeed, the record shows that plaintiff could not continue with his own counsel and proceeded pro se at the trial.

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., DeGrasse, Richter and Abdus-Salaam, JJ.

Saxe, J., dissents in part in a memorandum as follows: I respectfully dissent, to the extent that the majority upholds the custody determination. I agree with the majority that the record fails to provide sufficient support for the trial court's child support award. However, I would remand the matter not just for a new determination of child support, but also for a new custody trial before a different judge, based on the fundamental unfairness created by the denial of the pro se plaintiff's right to have sufficient access, before trial, to the 84-page report prepared by the court-appointed psychologist on the issue of custody.

Expert reports by mental health professionals are an important element of child custody litigation. The procedure typically employed by New York trial courts in recent years is to provide

a copy of the expert's report to the attorneys, with the direction that copies not be provided to the client or others outside the litigation team (*see* Tippins, *Forensic Custody Reports: Where's the Due Process?*, NYLJ, May 6, 2010 at 3, col 1). In 2006, a Matrimonial Commission appointed by the Chief Judge recommended a procedure in which it attempted to balance due process concerns with concerns about confidentiality: "Copies of the reports should be given to counsel for the parties and the attorney for the child, with the express instruction that no additional copies be made or disseminated without court permission. Clients can review the report at the attorney's office. If a litigant is self-represented, a separate copy of the report should be maintained at the courthouse for use by that litigant to review and make confidential notes. The litigant would not be permitted to remove this copy from the courthouse" (New York State Matrimonial Commission, Report to the Chief Judge of the State of New York, at 54 [Feb. 2006], available at http://www.nycourts.gov/reports/matrimonialcommissionreport.pdf [accessed June 12, 2012]).

The court here provided copies of the expert's December 16, 2010 report to the attorneys only. But, by the time of the pretrial conference held on February 24, 2011, plaintiff was proceeding pro se. In an effort to provide him with the information necessary for cross-examination of the expert, the court arranged that the social worker who had previously worked out a temporary visitation schedule between the parties would "sit with the parties and go over the report, and . . . explain to you what the report says, what it represents, and how the Court, what the Court will hear and consider, so that you will have the opportunity notwithstanding the fact that they gave a copy to your attorney." Later at that same pretrial conference, plaintiff remarked that the forensic evaluation was going to be a very significant part of the case, and that he was going to need a lot of access to it; in response to the court's warning that "[y]ou can't take it with you and discuss it with another person," plaintiff stated that he might be able to discuss it with an expert witness. The court then explained that not even an expert hired by a party would be given access to the forensic report: "Not everybody, including the experts. *We don't even show it to you and to you, and it's about you*. All right? This is just something that's used as an aid to the Court. So you're not going to have access. I'm not giving it to you to take with you, if that's what you want" (emphasis added). Before trial began on May 9, 2011, plaintiff protested to the trial court that while he had reviewed *some* of the report with his attorney during the time when he was still represented, he had not been able to review the whole

report thoroughly, and he had not been able to prepare adequately for cross-examination of the expert regarding the report and its conclusions. After further discussion, plaintiff asked: "Will I have any access to that at all in this trial? Will I be able to? How am I supposed to prepare to cross examine him if I am not going to be able to see that report?" These legitimate questions were not satisfactorily handled.

Effective cross-examination of the forensic expert is not possible without access to the report. Once plaintiff was permitted to proceed pro se, it was incumbent on the court to give him access to the report equivalent to that which was given to his adversary, defendant's counsel. In *Matter of Isidro A.-M. v Mirta A.* (74 AD3d 673, 674 [2010]), this Court considered another situation in which one parent was represented by counsel and the other was pro se, and we held that the denial of a copy of the report was not an improvident exercise of discretion, as long as the pro se party was permitted to review and take notes regarding the report before trial. We observed, however, that "the better practice in most cases would be to give counsel and pro se litigants access to the forensic report under the same conditions" (*id.*). At the very least, the court should have employed the procedure recommended by the Matrimonial Commission in 2006: if the litigant is not given a copy, then a separate copy of the report must be maintained at the courthouse for exclusive use by that litigant, for trial preparation and use during cross-examination of the expert.

Lacking adequate access to the expert's report, the pro se plaintiff had no hope of successfully cross-examining the expert. This failure of due process should be corrected and a new trial granted.