[58 NYS3d 35]

In the Matter of SALENA S., Appellant, v AHMAD G., Respondent.

First Department, June 22, 2017

## APPEARANCES OF COUNSEL

*Neal D. Futerfas*, White Plains, for appellant.

*Leslie S. Lowenstein*, Woodmere, for respondent.

*Karen P. Simmons, The Children's Law Center*, Brooklyn (*Rohan Grey* and *Janet Neustaetter* of counsel), Attorney for the Child.

## OPINION OF THE COURT

KAPNICK, J.

This proceeding arises from the mother's petition to relocate with the parties' child to Florida, which Family Court denied after a hearing.

"It is well established that in reviewing relocation and other custody issues, deference is to be accorded to the determination rendered by the factfinder, unless it lacks a sound and substantial basis in the record" (*Matter of David J.B. v Monique H.*, 52 AD3d 414, 415 [1st Dept 2008] [internal quotation marks omitted]). Moreover, "it is the rights and needs of the children that must be accorded the greatest weight" (*Matter of Tropea v Tropea*, 87 NY2d 727, 739 [1996]). Here, Family Court's lengthy and thoughtful decision has a sound and substantial basis in the record and the rights and needs of the child were accorded their due weight.

The record shows that the mother's plan to relocate to Florida was less of a plan and more of an amorphous idea. As Family Court concluded, "the mother simply failed to establish an overall educational, economic or emotional benefit to the child sufficient to outweigh the detrimental impact on the quality of the child's relationship with his father and other extended family that would necessarily result from a move to Florida." Specifically, the mother was unable to say exactly which town in Florida she would be moving to, but rather, testified during an inquest held on August 28, 2015, that she was considering Ft. Lauderdale, Kissimmee, or Orlando,[1] and that upon her last check of Section 8 apartment availability in Florida, there

---

1. Orlando and Kissimmee are about 200 miles from Ft. Lauderdale.

were apartments available in Ft. Lauderdale or Boca Raton.[2] She also acknowledged that she could obtain public assistance and Section 8 housing anywhere in the United States. At the time of the hearing, in February and March 2016, the mother was unemployed, having lost her previous job in a rehabilitation center and having had to resign from another job because she was unable to arrange for childcare to accommodate her work schedule. The mother testified that, despite trying, she had been unable to locate a job in New York with work hours from 9:00 a.m. to 5:00 p.m. She alleged that there were such jobs available in her field in Florida; however, she failed to provide any details or proof of such availability.

As far as childcare was concerned, the mother testified that her then boyfriend's mother, who lives in Ft. Lauderdale, would be available to help with the childcare. If the boyfriend's mother was not available, then the mother and her boyfriend would work at alternate times of day so that they could provide the necessary childcare. As Family Court aptly noted, it was not clear why this proposed alternate work schedule could not be put into place in New York. Moreover, and as noted in the appeal brief submitted by the Attorney for the Child, since the time Family Court issued its determination, the mother and her boyfriend (who is not the father of the subject child) are no longer romantically involved. This certainly calls into question the former boyfriend's mother's availability to provide childcare if the mother were to move to Ft. Lauderdale, as well as the mother's reason for continuing to want to move to Florida.

Regarding the father, the record shows that at the time of the hearing he was approximately $3,000 in arrears with respect to his child support obligations to the mother. The record also shows that he was not actively involved in the child's education or school events and missed or had to reschedule certain of his visitation dates and times. However, the father testified that the child has a strong attachment to him and the child sees his paternal grandmother on alternate weekends when he stays overnight with her while the father is working. Both relationships would be interrupted and suffer if the child moved to Florida, thus raising a question of the father's ability to maintain "meaningful access" to the child (see generally Matter of Tropea, 87 NY2d at 739). Moreover, the record shows that the father consistently sought modifications to his visita-

---

2.   Boca Raton is approximately a half hour's drive from Ft. Lauderdale.

tion schedule when his work schedule changed so that the two could be synchronized.

In support of her petition to relocate, the mother contends that the father is capable of visiting the child in Florida. Indeed, the record shows that the father has another daughter who resides in Florida with her mother and that he previously took the subject child to Florida for a vacation with the child's half-sibling. According to the mother, he can combine his visits to Florida to see the subject child with seeing his other daughter. However, the record also shows that the half-sibling lives in Ft. Pierce, Florida, which is at least 100 miles from either Ft. Lauderdale or Orlando.

Additionally, the father testified that he works two jobs, one of which requires him to work nights on the weekends. Thus, it is not clear when and how the father would be able to take time off from work to travel to Florida. At some point, the mother offered to pay for travel between New York and Florida and to allow the child to stay with the father for extended periods of time during holidays and summer vacation. However, it is unclear from the record how the mother would be able to finance travel to and from New York and, as already noted, difficult to comprehend how the father could care for the child for weeks at a time given his current work schedule. Indeed, the father's work schedule and demands likely preclude him from having any substantial flexibility so as to allow for frequent visits to Florida and/or extended visits by the child to New York.

Contrary to the mother's argument that her financial and economic situation would improve upon relocation to Florida, the record here shows that the mother did not establish that an overall economic benefit to the child would result from the move. Cases in which this Court has found an overall economic benefit to the child show that the parent petitioning for relocation presented more concrete details surrounding the relocation. For example, in *Matter of Kevin McK. v Elizabeth A.E.* (111 AD3d 124 [1st Dept 2013]), the mother had two job offers in Oxford, Mississippi, the town to which she wanted to relocate, and the mother's mother, as well as extended family, resided in Oxford, Mississippi.[3] In *Sonbuchner v Sonbuchner* (96 AD3d 566 [1st Dept 2012]), the mother, a post-graduate

---

**3.** The decision also indicated that there was an "exceptional public school" in Oxford, Mississippi (111 AD3d at 127).

student in a medical clinical training program, had been matched with a residency program in North Carolina, the state to which she wanted to relocate. In contrast, here, the mother did not provide any evidence of job offers or even job prospects in any of the cities she was considering. Morever, the mother does not have any extended family in these various cities.

To the extent that the briefs of the mother and the Attorney for the Child point to the fact that the father is in arrears with his child support obligations, this fact, although troubling and requiring resolution, does not, in and of itself, warrant a conclusion that the mother's petition should have been granted. As the Court stated in *Matter of Nairen McI. v Cindy J.* (137 AD3d 694, 695 [1st Dept 2016]), the "father's failure to pay child support is *a* factor in support of relocation" (emphasis supplied), and a factor that can tip the balance in favor of relocation when other factors are present. In *Matter of Nairen Mc.I.*, those other factors were that the mother and child were already living in Tennessee, the mother had obtained employment in Tennessee, the child's academic performance had improved in her Tennessee school, and there was a general improvement in the family's quality of life (*id.*). No such factors are present in the case before us.

Lastly, the Attorney for the Child supports the mother's relocation to Florida. However, the arguments made by the Attorney for the Child are just as vague and amorphous as those of the mother and are predicated on such statements as "if the mother's housing costs are reduced and she is able to obtain full-time employment" then her overall situation will improve. The Attorney for the Child cites *Yolanda R. v Eugene I.G.* (38 AD3d 288 [1st Dept 2007]) in support of the argument that Family Court should have attributed more weight to the position of the Attorney for the Child, whose client was only six years old at the time of the hearing before the Family Court. However, that case is distinguishable. There, the father waited 17 months after the mother and children had relocated to Atlanta before filing a formal complaint about their relocation, all the children had special needs and were enrolled in school in Atlanta and doing well, and the mother had her mother as well as extended family in Atlanta to help with the children. This Court also noted that the children all expressed to their Law Guardian a desire to move to Atlanta and that, according to the Law Guardian, the move was in the best interests of the children. Here, we are missing any information regarding a

job, a town to live in, a home to reside in, or a school to attend, and, as already noted, the mother does not have any family or extended family in Florida.

Although the mother's desire to relocate with her child to a safer and better environment is admirable, Family Court was correct in its determination that there is simply not enough, on this record, to establish that the child's best interests would be served if the mother and child relocate to Florida.

Accordingly, the order of the Family Court, Bronx County (Jennifer S. Burtt, Ct. Atty. Ref.), entered on or about June 7, 2016, which denied the mother's petition to relocate with the parties' child to Florida, should be affirmed, without costs.

Tom, J.P., Sweeny, Richter and Webber, JJ., concur.

Order, Family Court, Bronx County, entered on or about June 7, 2016, affirmed, without costs.