■ In the Matter of LOREN B., Appellant, v HEATHER A. et al., Respondents. (Proceeding No. 1.) In the Matter of SHARON ZZ., Respondent, v LOREN B., Appellant, et al., Respondent. (Proceeding No. 2.) [788 NYS2d 215]—

Kane, J. Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered May 15, 2003, which, inter alia, dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of his child.

Loren B. (hereinafter the father) and respondent Heather A. (hereinafter the mother) are the parents of one child (born in 1999). Petitioner Sharon ZZ. (hereinafter the aunt) is the mother's sister. When the father learned of his relationship to the child, he began slowly initiating visitation, working up to overnight weekend visits. In November 2001, the mother asked the father to keep the child for about a week. During that time, the child's teachers noticed an extreme behavioral change in the child and filed a report with child protective services. Respondent Rensselaer County Department of Social Services (hereinafter DSS) advised the mother not to allow contact between the father and child while they investigated. A few days

later, in early December 2001, DSS again became involved after the mother engaged in an argument with her family. Based on a DSS recommendation, the child went to live with the aunt. When the child first lived with the aunt, the father had supervised visitation. After his first unsupervised weekend visitation in February 2002, the aunt called child protective services and took the child to the hospital because the child was agitated about having her diaper removed and her vaginal area was red and puffy. The father was then restricted to supervised visitation through various agencies, but the visits did not go smoothly. An abuse petition filed against the father by DSS was resolved by an adjournment in contemplation of dismissal which required the father to undergo evaluations and follow all recommendations.

The father commenced proceeding No. 1 against the mother and DSS seeking custody. The aunt then commenced proceeding No. 2 against the father and the mother seeking custody. After a hearing, Family Court granted sole custody to the aunt, supervised visitation to the mother, and visitation to the father only at such time as recommended by the child's counselors. The father appeals.

The father's contention that collateral estoppel barred Family Court from considering the sexual abuse allegations that were also contained in DSS's abuse petition is incorrect. Collateral estoppel only applies to a prior adjudication on the merits. The adjournment of the abuse petition in contemplation of dismissal was "emphatically not a determination on the merits . . . but, rather, it leaves the question unanswered" (*Matter of Marie B.*, 62 NY2d 352, 359 [1984]; *see Matter of Carey K.*, 265 AD2d 617, 618 [1999]). Thus, there was no prior determination which could be given preclusive effect.

Family Court improperly allowed the results of a psychophysiological detection of deception examination, a type of polygraph examination, into evidence through the psychologist's report. The Court of Appeals has held, in the criminal context, that polygraph evidence is not admissible because it has not been established as sufficiently reliable within the scientific community (*see People v Angelo*, 88 NY2d 217, 223 [1996]; *People v Shedrick*, 66 NY2d 1015, 1018 [1985]). Every other department of the Appellate Division has imported that holding into the Family Court arena (*see Matter of Stephanie B.*, 245 AD2d 1062, 1063 [4th Dept 1997]; *Matter of Erick R.*, 166 AD2d 161, 162 [1st Dept 1990], *lv denied* 77 NY2d 802 [1991]; *Matter of Aryeh-Levi K.*, 134 AD2d 428, 429 [2nd Dept 1987]). We agree that polygraph examination results should not be admitted into evi-

dence because they have not been established as sufficiently reliable.

Family Court also erred by admitting the psychologist's report into evidence. Two psychologists worked together to create the report, yet only one testified. The testifying psychologist was not the one who interviewed other family members, whose comments were included in the report. Additionally, the report not only included the polygraph examiner's official results, but also his informal opinion as to the father's truthfulness regarding certain topics. Because the report relied on hearsay statements from individuals who had no business obligation to provide information to the psychologist, it was inadmissible as a business record (*see Matter of Shane MM. v Family & Children Servs.*, 280 AD2d 699, 701 [2001]). With that report excluded, the psychologist's opinion is not entitled to great weight because it was based in part on facts not in evidence and the inadmissible polygraph results, and the psychologist incorrectly stated that he had conducted certain psychological tests which the nontestifying psychologist had conducted.

Even excluding the psychologist's report, a preponderance of the evidence supports Family Court's conclusion that extraordinary circumstances existed here and it was in the child's best interests to live with the aunt. The November 2001 sexual abuse report filed by school personnel was indicated by child protective services. After the child's unsupervised weekend visit in February 2002, her vagina was red and puffy and she screamed when the aunt tried to change her diaper. The child acted out sexually with dolls and had noticeable behavioral changes following the only two occasions upon which she had overnight unsupervised visitation with the father. During arranged supervised visits, the child was extremely fearful and uncomfortable around the father, exhibiting behavior that one supervisor described as motivated by fear and a reaction like no other child she had seen. The father himself believed that the child was sexually abused, but he pointed the finger at others. The child stated that the father hurt her, that he was a "bad boy" and that he hurt her "booty," which she pointed out as her vagina. In this custody case raising allegations of abuse, we apply Family Ct Act article 10 evidentiary rules regarding corroboration (*see* Family Ct Act § 1046 [a] [vi]; *Matter of Rosario WW. v Ellen WW.*, 309 AD2d 984, 987 [2003]). These statements by the child were corroborated by the child's behavioral changes and physical condition during and after visitation with the father (*see Matter of Cecilia PP.*, 290 AD2d 836, 837-838 [2002]; *Matter of Grace VV.*, 206 AD2d 608, 609 [1994], *lvs denied* 84 NY2d 809 [1994]; *Matter of Jessica Y.*, 206 AD2d 598, 600 [1994]).

Based on this evidence, Family Court properly concluded that the father had inappropriate sexual contact with the child on more than one occasion, creating extraordinary circumstances necessitating a best interests review (*see Matter of Carosi v Bloom*, 225 AD2d 692 [1996]; *see also Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]). The aunt had physical custody of the child for a year and a half, having assumed custody when the child was barely two years old, and the child was doing well in her care. Here, the record supported the court's determination that it would be in the child's best interests to remain with the aunt.

Crew III, J.P., Spain, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, without costs.