■ In the Matter of Todd P. Wiedenkeller, Respondent, v Sharon T. Hall, Appellant. [830 NYS2d 382]—

Spain, J. Appeal from an order of the Family Court of Ulster County (Work, J.), entered April 13, 2005, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

At issue is the custody of a child (born in 2002), the son of petitioner (hereinafter the father) and respondent (hereinafter the mother). The custody struggle between the parties, who lived together periodically but never married, began almost im-

mediately after the child was born. Pursuant to a March 2003 agreement memorialized in a June 12, 2003 order, the parties agreed to joint custody of the child, with the mother having primary physical custody. Between the time of the parties' agreement and the entry of the 2003 order, however, the father sought modification of that order, alleging that the mother refused to tell him essential information concerning the child, including where they were living and what child care and medical arrangements existed for the child. A flurry of petitions ensued wherein the father continued to allege changed circumstances, including that the mother moved a significant distance away, and the mother countered with her own petition seeking modification of the 2003 order based on changed circumstances.

By order dated July 23, 2004, Family Court granted the father temporary custody of the child with supervised visitation to the mother. The parties then filed further petitions—amounting to nine outstanding petitions between the parties—and, following a full hearing and a detailed written decision, Family Court granted sole custody to the father with weekly supervised visitation to the mother until such a time that she demonstrates compliance with a number of conditions. On this appeal by the mother, we affirm.

"Where a voluntary agreement of joint custody is entered into, it will not be set aside unless there is a sufficient change in circumstances since the time of the stipulation and unless the modification of the custody agreement is in the best interests of the children" (*Matter of Gaudette v Gaudette*, 262 AD2d 804, 805 [1999], *lv denied* 94 NY2d 790 [1999] [citation omitted]; *see Matter of Hamm-Jones v Jones*, 14 AD3d 956, 958 [2005]; *Grandin v Grandin*, 8 AD3d 710, 711 [2004]). On the other hand "where, as here, the existing custody arrangement is borne of the parties' agreement, rather than as the result of a plenary hearing before Family Court, it is only one of the factors to consider in determining what is best for the child" (*Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]).

During the history of this proceeding, both parties have asserted a change in circumstances since the 2003 order and, in any event, ample evidence exists in the record to support Family Court's conclusion that such a change in circumstances occurred. Specifically, the mother's move to another county—resulting in an hour and a half drive for the father each way for visitation—combined with her persistent refusal to provide the father with her proper address and other significant contact information evinces, in our view, a serious and flagrant disregard of both the parties' joint custody agreement and the welfare of

the child. On several occasions, the mother brought the child to a hospital emergency room for medical attention without thereafter informing the father. Under these circumstances, we find that the acrimony between the parties has increased to the point that it bars effective communication, creating a situation where it is proper to revisit the issue of custody (*see Grandin v Grandin, supra* at 711; *Matter of Markey v Bederian*, 274 AD2d 816, 817-818 [2000]; *Matter of Moreau v Sirles*, 268 AD2d 811, 812 [2000], *lv denied* 95 NY2d 752 [2000]).

We find, as well, that Family Court's determination to give sole custody to the father has a sound and substantial basis in the record and, accordingly, will not be overturned (*see Grandin v Grandin, supra* at 712). In determining what result would be in the best interests of the child, it was incumbent upon Family Court to "assess all relevant factors, 'including the quality of the parents' respective home environments, the length of time that the present custody arrangement has been in place and each parent's past performance, relative fitness, and ability to guide and provide for the child's intellectual and emotional development' " (*Matter of Bjorkland v Eastman*, 279 AD2d 908, 909-910 [2001], quoting *Matter of Alice A. v Joshua B.*, 232 AD2d 777, 779 [1996]). Contrary to the mother's assertions on appeal, the court did not err by reviewing the totality of the circumstances in making its best interests determination, including evidence of circumstances which existed prior to the entry of the 2003 order (*see Matter of Eck v Eck, supra* at 1083; *Matter of Defayette v Defayette*, 28 AD3d 820, 821 [2006]).

Family Court properly relied on the fact that the mother failed to keep the father apprised of where she and the child were living when she had physical custody. Indeed, it is clear from the record that she not only lied to the father but, during the course of this proceeding, she gave false testimony to the court concerning her address, as well as a variety of other issues. Evidence was also introduced that on several occasions the father made the trip for visitation and the mother, without attempting to reach the father, failed to produce the child for the visit. On one such occasion, the mother's proffered excuse that she took the child to the emergency room was belied by record evidence. The mother also neglected or refused to inform the father when the child was injured, even when those injuries were significant enough to require a trip to the emergency room. These actions evince a fundamental misunderstanding of the nature of joint custody, an attitude which can only be detrimental to the child's well-being. In addition, uncontradicted evidence was introduced that on one occasion the mother went shopping in a supermar-

ket while leaving the child in the car with the engine running and the doors unlocked. Finally, it is clear that the mother has been unable to provide a stable residence for the child; since the 2003 order the mother, the child and the mother's other son have apparently moved several times, staying at times with the mother's sister in a one bedroom apartment and spending approximately two months living in a shelter.

In contrast, the father's more credible testimony indicates that he can provide a stable home for the child and, with the mother's cooperation, is willing to foster a continued relationship between the child and the mother. Accordingly, we find that Family Court's well-reasoned determination that it is in the best interests of the child to grant sole custody to the father is amply supported by the record. In addition, in light of the mother's past secrecy and dishonesty regarding her residency, we find appropriate the court's decision that a risk exists that the mother might flee the state with the child and, accordingly, that the mother's visitation be supervised until she can demonstrate compliance with the conditions imposed by Family Court.

Cardona, P.J., Carpinello, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.