In the Matter of MICHAEL CC., Respondent, v AMBER CC., Appellant. (And Another Related Proceeding.) [868 NYS2d 803]—

Spain, J.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a son born in 2001. The parties agreed in July 2005 that the mother would have custody of the son and the father would have regular parenting time, and an order to that affect was made in Jefferson County. During a visit with the father on December 24, 2006, the father and his live-in girlfriend discovered substantial bruises on the then five-year-old child's lower torso, from his waist to his feet. The father took him to the hospital the next day where he was examined by a physician, and a child protective service hotline report was made. On December 27, 2006, on the father's petition to modify the prior custody order, Family Court, Jefferson County (Schwerzmann, J.), granted him temporary custody and transferred the case to Madison County, where the father

resides. The mother then cross-petitioned for sole custody requesting that the father have no contact with the child. In May 2007, Family Court (McDermott, J.) continued temporary custody with the father with weekend parenting time to the mother, but later issued an order requiring that the mother's visiting time be supervised by the father or his girlfriend based upon allegations that the child was being left alone with the perpetrator of these injuries.

After a fact-finding hearing and a *Lincoln* hearing in November 2007, Family Court determined in a detailed and well-reasoned written decision that the mother's boyfriend was responsible for the child's bruises and that the mother knew but did not tell anyone or seek medical care; the court found this constituted a change in circumstances and that it would be in the child's best interests to award sole custody to the father. The mother was permitted unsupervised visitation on alternating weekends, holidays and summers provided she not permit the child to be in the boyfriend's presence unless another adult is present, until the mother and boyfriend complete certain parenting and/or anger management courses. The mother now appeals.

In these custody modification proceedings in which allegations of abuse are raised, we apply Family Court article 10 evidentiary rules, including those requiring corroboration of a child's prior out-of-court statements (*see Matter of Loren B. v Heather A.*, 13 AD3d 998, 1000 [2004], *lv denied* 4 NY3d 710 [2005]; *see also Matter of Richard SS.*, 29 AD3d 1118, 1121 [2006]; Family Ct Act § 1046 [a] [vi]). Here, Family Court's determinations that the boyfriend's abuse of the child caused the bruising and that the mother was present and aware of it, but took no action, were supported by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]; *see also Matter of Tammie Z.*, 66 NY2d 1, 3 [1985]).[1] The father and his girlfriend, whose testimony Family Court expressly credited, testified that the father picked the child up at the mother's apartment on the evening of December 22, 2006, the father and son visited the mother's nearby parents, and the child fell asleep in the car on the way home, exhibiting no signs of injury. The child participated in normal play and holiday activities the next day in his father's home, in which his girlfriend's three daughters (ages 14, 12 and 11) and six-year-old cousin lived. The child first complained of pain in his legs on the afternoon of December 24, 2006 and, when his complaints persisted, a bath was suggested

---

1. It was reported to Family Court that no abuse or neglect proceeding was instituted because the parties had been "cooperative."

and the father and his girlfriend discovered the extensive bruising. The child repeatedly asserted that he did not know what caused the bruises.

The next morning, Christmas day, the father took the child to the hospital where Bonnie Grossman, the director of the emergency department, examined him. Grossman ruled out blood disorders and opined that the extensive bruises to his lower torso were most likely caused by a beating or a fall—i.e., by the child being struck by a blunt object in places and being tightly squeezed or compressed in other areas—and not by a hand. She believed that based upon their color, they had been inflicted within several days to a week and likely all at the same time, although it was possible that some were inflicted days apart. Grossman observed that the child was close to his father, who was supportive, and was not fearful of him. The father telephoned the mother, who indicated that she had no knowledge of the cause of the bruises.

On the issue of who inflicted the injuries, the child at first persistently indicated that he did not want to talk about it, and he denied knowing how they occurred other than that he had been spanked by an unidentified person. When interviewed by an investigator from Child Protective Services (hereinafter CPS) the day after his hospital visit, the child again denied knowing who inflicted the injuries, but he rocked back and forth and covered his ears when asked about his parents. In March 2007, after several months with the father and no contact with the mother,[2] the child first disclosed to his father's girlfriend and the father's sister that the mother's boyfriend had spanked him in the mother's presence after she said the child had lied. The child promptly reiterated this to the father (and repeated it about 20 times over the ensuing months) indicating that he did not want to get his mother in trouble, and that the boyfriend had spanked him several other times. In August 2007, the child repeated to a CPS investigator that the boyfriend had spanked him in front of the mother for lying.

The child's out-of-court statements to the father, his girlfriend and the CPS investigator—attributing the injuries to the boyfriend and reflecting that the mother was present and aware of them—were corroborated by the injuries themselves, the timing of the transfer of the child to the father late on December 22, 2006, the child's behavior around the father and by the con-

---

**2.** The mother testified that she did not see the child from the time that Family Court granted the father temporary custody (December 27, 2006) until April 2007 because she believed that contact was prohibited, although no one from CPS told her that, and the order did not prohibit contact.

sistency of his statements (*see Matter of Richard SS.*, 29 AD3d at 1121; *see also Matter of Richard SS.*, 55 AD3d 1001, 1002 [2008]). They were also corroborated by the medical testimony that the appearance of the bruises on the morning of December 25 indicated that the injuries had likely been inflicted within several days, but more than 24 hours prior. Further corroboration included behavioral problems attendant to visitation with the mother. Accordingly, there was ample corroboration of the child's account, exceeding the " 'relatively low degree of corroborative evidence' " required (*Matter of Richard SS.*, 29 AD3d at 1121, quoting *Matter of Joshua QQ.*, 290 AD2d 842, 843 [2002]).

The mother testified that the child had no bruises when she bathed him the night before he went with his father, the boyfriend and the mother testified that he never spanked the child and she testified that she had only done so once. She and her mother testified that the child told her during a June 2007 visit that the father had told the child to say that the boyfriend had hurt him (which the father denied). We accord great deference to Family Court's express credibility determinations, made after observing firsthand the witnesses' demeanor and testimony, which will not be disturbed (*see Matter of Passero v Giordano*, 53 AD3d 802, 803 [2008]; *Matter of Lopez v Robinson*, 25 AD3d 1034, 1035 [2006]; *see also Matter of Richard SS.*, 55 AD3d at 1002-1003). The determination that the child was abused at the hands of the mother's boyfriend, and that the mother was aware of it but did not disclose it or take protective action, is supported by the preponderance of credible evidence (*see* Family Ct Act § 1046 [b] [i]; *Matter of Tammie Z.*, 66 NY2d at 1; *Matter of Loren B. v Heather A.*, 13 AD3d at 1000).

We also agree that the foregoing constituted a sufficient change in circumstances warranting reconsideration of the child's continued custodial best interests (*see Matter of Nephew v Nephew*, 45 AD3d 1194, 1195 [2007]). Contrary to the mother's appellate claims, Family Court did not base its best interests finding in favor of custody with the father solely on its abuse finding but, rather, specifically addressed other relevant factors (*see Matter of Roe v Roe*, 33 AD3d 1152, 1153 [2006]). The court noted the greater stability provided in the father's home, where the child is "happy and well cared for," the father's efforts to work with the child on his intellectual and educational development, and his prompt response to the child's injuries (undeterred by concerns he might be implicated). Notably, also, the father promoted the child's relationship with his maternal grandparents, regularly taking him (when he picked him up for his parenting time) to visit with them and allowing the maternal

grandmother to attend supervised visitations. Further, the father's girlfriend, by all accounts, helps to care for the child and has a good relationship with him, as do her daughters, and neither she nor the father spoke ill of the mother or interfered with the mother's relationship with the child. The mother, who had moved to four different apartments in the prior year, unexplainably knew nothing about the child's school or teacher. She also failed to offer a believable excuse for not calling or seeing the child for three months after temporary custody was transferred to the father, during which she resided with the boyfriend. Her aggressive and manipulative behavior during supervised visits was, in many respects, not in the child's best interests. Given that there is no communication between the parties, joint custody was rightfully ruled out (*see Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]; *Matter of Wiedenkeller v Hall*, 37 AD3d 1033, 1035-1036 [2007], *lv denied* 8 NY3d 816 [2007]). We see no basis upon which to disturb Family Court's well-supported discretionary determination that the child's best interests are served by granting the father sole custody, with regular and consistent parenting time with the mother.

Mercure, J.P., Carpinello, Kane and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.

