■ In the Matter of MICHAEL J. OPALKA, Respondent, v CARRIE B. SKINNER, Appellant. [916 NYS2d 271]—

Spain, J.P. Appeal from an order of the Family Court of Saratoga County (Abramson, J.), entered December 10, 2009, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

This is an appeal from a Family Court order which effectuated a change in custody of two young children from joint legal custody with primary physical custody to respondent (hereinafter the mother)—as awarded by a July 2007 Family Court order—to sole physical and legal custody to petitioner (hereinafter the father) with limited visitation to the mother. The parties are the divorced parents of a son (born 2003) and a daughter (born 2005). The father commenced this proceeding in September 2007 seeking a modification in the July 2007 custody order. During the pendency of this proceeding, as a result of numerous petitions, testimony and orders, temporary physical custody was transferred from the mother to the paternal grandparents, to both sets of grandparents jointly, and ultimately to the father. After an extensive trial consisting of nine days of testimony protracted over many months, Family Court granted the father's petition. On the mother's appeal, we now affirm.

Although the facts of this matter render the issues difficult to resolve, there are no novel legal issues presented. As we are dealing with a change in custody from a prior Family Court order, it was the father's burden to first demonstrate some change in circumstances that would warrant the court to reexamine the issue of custody (*see Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]). Many of the events which factor into this analysis occurred after the commencement of this proceeding; however, sufficient evidence exists to support a significant change in circumstances at the time the petition was filed. Through the testimony of a man that the mother was dating in the months immediately preceding the commencement of this proceeding, it

was established that, after only three weeks, over her paramour's objections, the mother insisted that the children call him "daddy," she regularly administered Benadryl to the children and put them to bed as early as 6:00 P.M. and then joined her paramour in drinking alcohol and smoking marihuana, on at least one occasion she traded her prescription anxiety medication for marihuana, there was rarely any food in her home and she untruthfully asserted to others that the father had convictions of assault and drug charges. This testimony was corroborated by the testimony of two subsequent paramours who described extremely similar experiences. Cognizant that a change in circumstances may be found where "the custodial parent places his or her own lifestyle desires ahead of the emotional well-being of the children" (*Matter of Hudson v Hudson*, 279 AD2d 659, 660 [2001]), we conclude that the mother's behavior constituted a sufficient change in circumstances to warrant an examination of whether a change in custody is in the best interests of these young children (*see Matter of Arieda v Arieda-Walek*, 74 AD3d 1432, 1433 [2010]; *Matter of Card v Rupert*, 70 AD3d 1264, 1265 [2010]; *Matter of Burola v Meek*, 64 AD3d 962, 965 [2009]; *Matter of Kelley v VanDee*, 61 AD3d 1281, 1283 [2009]).

Having concluded that a best interest analysis is warranted, the factors to be considered by Family Court are maintaining stability in the children's lives, the quality of respective home environments, the length of time the present custody arrangement has been in place, each parent's past performance, relative fitness and ability to provide for and guide the children's intellectual and emotional development, and the effect the award of custody to one parent would have on the children's relationship with the other parent (*see Matter of Torkildsen v Torkildsen*, 72 AD3d 1405, 1406 [2010]; *Matter of Siler v Wright*, 64 AD3d at 928; *Matter of Zwack v Kosier*, 61 AD3d 1020, 1021 [2009], *lv denied* 13 NY3d 702 [2009]). Here, although neither parent testified, the evidence suggests that both parents love their children and want what is best for them, but that both parents are challenged with bipolar disorder. Giving the deference due to the court's factual findings and credibility determinations (*see Matter of Jeker v Weiss*, 77 AD3d 1069, 1070 [2010]; *Matter of Torkildsen v Torkildsen*, 72 AD3d at 1406), we find ample support for its conclusion that it is in the children's best interests for the father to have sole custody.

Specifically, the record supports the following findings of fact. First, the mother has engaged in actions which, even if fueled by actual beliefs on her part, unfairly operated to vilify the

father and alienate him from his children. Specifically, she asked the children to call three different men—after only weeks into each relationship—"daddy." Further, after the mother was advised that an initial report of a skull fracture suffered by the daughter was false and that no fracture or discernable injury had occurred and, instead, that the child had a virus, the mother continued to tell others, including health care professionals who relied on the information, that the father had fractured the daughter's skull. Although the record contains evidence of suspected physical abuse by the father, allegations that bruises on the children occurred at the father's hands either came from the mother or from the children, after spending time with the mother. There is support in the record for Family Court's determination that no definitive credible evidence exists that either parent has ever physically abused these children.

Sufficient evidence also exists to support Family Court's finding that the mother conditioned the children to fear their father. Expert testimony was introduced at trial evaluating telephone conversations between the children and their parents. Significantly, the expert opined that, while the mother had custody, a sudden switch in the son's conversations from an affectionate, playful tone with his father to intensely negative communications where the son repeatedly accused the father of being mean could only have come about through psychological manipulation, as the son had not spent any time with the father that could explain such a drastic change in his manner. Further, the expert analyzed over 40 telephone calls between the mother and the children after the children were removed from her custody and opined that the mother was clearly grooming the children to induce anxiety and sadness. The expert opined that the mother's need to have the children demonstrate sadness each time they spoke to her was an attempt to interfere with their adjustment to the father's house and was emotionally damaging.

Shortly after this proceeding was commenced, the mother admitted the son to a mental health facility in the City of Saratoga Springs, Saratoga County, reporting uncontrollable behavior and violence by the son against her, his sister and himself, precipitated, in the mother's opinion, by his witnessing domestic violence by the father. The son was subsequently admitted to a medical clinic in the City of Albany where he stayed for nearly a month and was administered drug treatment for posttraumatic stress disorder, based at least in part on the mother's false allegation that he witnessed his father fracture the daughter's skull. The record contains evidence that

since physical custody was transferred from the mother, the son has been removed from medication, is more relaxed and has not required any kind of institutional confinement. Despite the evidence that the mother has a loving relationship with her children, seeks help for her psychological problems and is able to demonstrate parenting skills, we find the record also supports the conclusion that she is consistently dishonest and is unwilling or unable to enable her children to foster a relationship with their father. Under these circumstances and viewing the entire record before us, we conclude that Family Court properly determined that a change in custody was in the children's best interests (see Matter of Arieda v Arieda-Walek, 74 AD3d at 1433-1434; Matter of Calandresa v Calandresa, 62 AD3d 1055, 1056-1057 [2009]; Matter of Michael CC. v Amber CC., 57 AD3d 1037, 1040-1041 [2008]).*

The mother also challenges Family Court's requirement that the mother's visitation be either supervised (by either a grandparent or other supervisor agreed upon by the parties) or in a public place. The determination as to visitation is generally left to the sound discretion of Family Court (see Matter of Conklin v Hernandez, 41 AD3d 908, 910 [2007]; Matter of Edward S. v Moon, 7 AD3d 834, 836 [2004]). Given the evidence that the mother is willing to manipulate the children's perception of the father to the detriment of the children's emotional health, we cannot agree that these restrictions are unwarranted. While the record contains evidence that the mother and the children have a close and loving relationship and that their interaction is, at times, completely appropriate, the record also supports the conclusion that the mother does not appreciate the detrimental impact that her manipulation of the children's view of their father has upon them. Under these circumstances, we conclude that Family Court acted within its discretion in fashioning a visitation arrangement designed to avoid, at the present time, any emotional harm to the children while permitting the mother to have meaningful interaction with them (see Matter of Eck v Eck, 57 AD3d 1251, 1252-1253 [2008]; Matter of Edward S. v Moon, 7 AD3d at 836).

Rose, Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

---

* A substantial portion of the mother's argument on appeal centers around criticism of the report of the court appointed psychologist. Given the record evidence that the process utilized by that psychologist was deficient, Family Court did not rely on her conclusions. In reaching our determination, we have not relied on any of the factual content or the opinions contained in that report.