■ In the Matter of TIMOTHY N., Respondent, v GWENDOLYN N., Appellant. (And 14 Other Related Proceedings.) [938 NYS2d 679]—

Garry, J.

"Where a voluntary agreement of joint custody is entered into, it will not be set aside unless there is a sufficient change in circumstances since the time of the stipulation and unless the modification of the custody agreement is in the best interests of the children" (*Matter of Wiedenkeller v Hall*, 37 AD3d 1033, 1034 [2007], *lv denied* 8 NY3d 816 [2007] [internal quotation marks and citations omitted]; *accord Matter of Ferguson v Whible*, 55 AD3d 988, 989 [2008]). A sufficient change in circumstances exists where the parties relationship has so deteriorated that joint custody is no longer appropriate or possible (*see Matter of Keefe v Adam*, 85 AD3d 1225, 1226 [2011]; *Matter of Seacord v Seacord*, 81 AD3d 1101, 1104 [2011]).

The mother contends that Family Court improperly relied on events occurring after the filing of the modification petition in determining that there had been a sufficient change in circumstances, and that any incidents occurring prior to the petition were insufficient to warrant review of custody and the best interests of the children. We disagree. Although the fact-finding

hearing encompassed all of the petitions, Family Court's analysis was properly restricted to, and supported by, the evidence regarding the parties' relationship prior to the filing of the father's modification petition. Testimony revealed that during the brief existence of the stipulated custody agreement, the mother interfered with the father's scheduled visitation on numerous occasions, even forcing the children to hide in her house to deny the father parenting time with them. In direct violation of the stipulation, she refused to allow the paternal grandmother to pick up the children, again to deny or delay the father's visitation. She frequently prevented the father from contacting the children by phone and threatened to change the children's surname to her own. Placing her own interests first, she refused to allow the daughter to bring her schoolwork along when visiting with the father, and the daughter's grades suffered as a result. The mother also cancelled after school activities for the older son to prevent the father and his family from attending these events with the child. Considering this behavior and the resulting effect on the parties' ability to effectively communicate about the children, we agree with Family Court that there was a sufficient change in circumstances at the time the petition was filed (*see Matter of Seacord v Seacord*, 81 AD3d at 1104; *Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1101 [2007]).

We further find ample support in the record for the award of sole custody to the father. Upon review, we accord deference to Family Court's credibility determinations, and its findings will not be disturbed unless they lack a sound and substantial basis in the record (*see Matter of Keefe v Adam*, 85 AD3d at 1226-1227). A best interests analysis should consider factors including "maintaining stability in the children's lives, the quality of respective home environments, the length of time the present custody arrangement has been in place, each parent's past performance, relative fitness and ability to provide for and guide the children's intellectual and emotional development, and the effect the award of custody to one parent would have on the children's relationship with the other parent" (*Matter of Opalka v Skinner*, 81 AD3d 1005, 1006 [2011]; *see Matter of Kilmartin v Kilmartin*, 44 AD3d at 1102). " '[W]here, as here, the existing custody arrangement is borne of the parties' agreement, rather than as the result of a plenary hearing before Family Court, it is only one of the factors to consider in determining what is best for the child[ren]' " (*Matter of Wiedenkeller v Hall*, 37 AD3d at 1034, quoting *Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]).

In addition to the mother's actions prior to the filing, as

described above, during the fact-finding hearing she admitted to subsequently harassing the father with text messages, phone messages, and e-mails. Other testimony revealed that she cancelled mental health and dental appointments for the children that were scheduled during the father's visitation time and refused to share medical, educational, and other important information about the children with him. She allowed the daughter to read a disturbing text message sent during an exchange with the father's girlfriend, as well as a violation petition filed by the father. As a result, she was indicated for inadequate guardianship following a child protective investigation. There was additional testimony that the mother reprimanded the children for discussing the father and his girlfriend in her presence and that she instructed the children to speak negatively to others about the father and the girlfriend. She had a physical altercation with the daughter when the daughter attempted to bring her backpack on a visit with the father, and endeavored to block the children from speaking to the father and his family in public.

By contrast, the father did not interfere with the mother's custody rights nor attempt to alienate her from the children. In an effort to be readily available for the children, the father made arrangements with his employer to work locally and ended his commitment to the Army Reserves. The children's well-being showed improvement in several respects after their visitation with the father increased, and he has engaged them in counseling. The children share a good relationship with both the father and his girlfriend. Accordingly, the record fully supports Family Court's determination that an award of sole custody to the father was in the best interests of the children (*see Matter of Seacord v Seacord*, 81 AD3d at 1104; *Matter of Eck v Eck*, 33 AD3d at 1084).

Peters, J.P., Lahtinen, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, without costs.