■ In the Matter of CHARLOTTE WENTLAND, Appellant, v GARY ROUSSEAU, Respondent. [875 NYS2d 280]—

Kavanagh, J. Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered October 23, 2007, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) have a son (born in 1997). Since before the child was born, the mother and father both resided in Pennsylvania. In 2002, the mother left Pennsylvania and moved to New York with the child to live with David Terranella, a former boyfriend. In May 2006, after she had an argument with Terranella that required police intervention, the mother contacted the father and told him that she had a fight with Terranella, that she "couldn't take it no more" and asked the father to come and get her and the child. The father moved the mother and child back to Pennsylvania and, for a brief period of time, the three resumed living together. Less then one month later, the mother was arrested when she returned to New York to retrieve her belongings and was incarcerated on outstanding traffic warrants. During this time, the child—from May 2006 through August 2006—resided with the father, who then petitioned for custody in Pennsylvania. After she was released from jail, the mother resumed residing with Terranella and filed a custody

petition in New York.[1] A hearing was held on the mother's petition and Family Court took testimony from four witnesses—the parties, Terranella, and Kim Kraft, a friend of the father—and conducted a *Lincoln* hearing. It also considered a psychological evaluation of the parties and the child conducted by the Ulster County Mental Health Department. Ultimately, the court awarded custody of the child to the father with visitation to the mother. The mother now appeals.

In determining the best interests of the child, Family Court was required to consider various factors, including how the decision would impact on the child's stability, the home environment of both parents, "each parent's willingness to foster a relationship with the other parent, and their past performance and ability to provide for the [child's] overall well-being" (*Matter of Clupper v Clupper*, 56 AD3d 1064, 1065-1066 [2008]; *see Matter of Smith v Miller*, 4 AD3d 697, 698 [2004]). Family Court weighed those factors and determined that an award of custody to the father was in the child's best interests (*see Eschbach v Eschbach*, 56 NY2d 167, 172-174 [1982]; *Matter of Anson v Anson*, 20 AD3d 603, 604 [2005], *lv denied* 5 NY3d 711 [2005]; *Matter of Neail v Deshane*, 19 AD3d 758, 758 [2005], *lv denied* 5 NY3d 711 [2005]).[2] Our review leads us to conclude that the court's determination was supported by a sound and substantial basis in the record (*see Matter of Holle v Holle*, 55 AD3d 991, 992 [2008]; *Matter of Hissam v Mackin*, 41 AD3d 955, 956 [2007], *lv denied* 9 NY3d 809 [2007]; *Matter of La Pointe v La Pointe*, 33 AD3d 1174, 1175 [2006]).

The primary basis for Family Court's award of custody to the father was the nature of the mother's relationship with Terranella and the fact that it periodically exposed the child to incidents of domestic violence. In that regard, the court heard the mother's description of the events of May 2006 that prompted her to leave the home with the child, seek police intervention and call the father for assistance. Evidence was also presented that, on another occasion after an argument with Terranella, the mother was forced to flee the home with the

1. In June 2006, a Pennsylvania court awarded custody of the child to the father. The mother filed a custody petition that same month in New York, but withdrew it when the Pennsylvania order was vacated. She subsequently filed the instant petition in September 2006 and Family Court issued a temporary order awarding her custody of the child.

2. The mother suggests that because the child has been exclusively in her care since his birth, this was an informal custodial arrangement. Even if we accept this characterization, this would be but one of the factors relevant to a best interests analysis and, in fact, Family Court gave it proper consideration (*see Matter of Anson v Anson*, 20 AD3d at 604).

child and spend the night in the woods. There was also testimony that Terranella had on occasion pushed the child and had exposed him to marihuana.[3] While the mother and Terranella take issue with the court's characterization of their relationship, we defer to the court's credibility determinations of the witnesses who had testified at the hearing and its reliance, in particular, on the sworn testimony given by the father and Kraft (*see Matter of Decker v Lackos*, 41 AD3d 916, 918 [2007]; *Matter of Hissam v Mackin*, 41 AD3d at 956; *Matter of Anson v Anson*, 20 AD3d at 604; *Matter of Drew v Gillin*, 17 AD3d 719, 721 [2005]). We also note that Family Court found that the mother's persistent denials that she and the child had been exposed to domestic violence were not credible and that such a finding leads to the inevitable conclusion that the mother is simply unwilling to appreciate the harmful effects that exposure to this type of conduct must, of necessity, have on the child.

The mother also asserts that Family Court's best interests analysis was flawed due to the fact that it failed to take into account that the father has a criminal conviction on his record for assaulting her. Simply because Family Court, in its assessment of all the evidence presented at the hearing, may have placed more importance on the mother's and Terranella's recent behavior and their admitted abuse of alcohol, in deciding what was in the child's best interests, does not mean that it did not consider all of the evidence introduced at the hearing. It is for the court to decide what importance is to be attributed to the evidence as presented and, unless that evaluation lacks a sound and substantial basis, this Court will not disturb it (*see Matter of Decker v Lackos*, 41 AD3d at 918; *Matter of Hissam v Mackin*, 41 AD3d at 956).

As for the child's express desire to continue to live with the mother, Family Court, in part, attributed this to the mother's persistent efforts to prevent the father from developing a meaningful relationship with the child (*see Matter of Gravelding v Loper*, 42 AD3d 740, 743 [2007]). It found that the mother had consistently demonstrated a "willingness to denigrate [the father] to the child" and had "attempted to interfere with [the

---

3. To the extent that the mother's brief can be read as raising a claim that Family Court erred in taking into account statements attributed to the child, the statements were properly admitted. Family Ct Act § 1046 (a) (vi) is applicable to custody proceedings that are based in part upon allegations of abuse or neglect, and the subject child's prior out-of-court statements are excepted from the rule against hearsay if they are sufficiently corroborated (*see Matter of Cobane v Cobane*, 57 AD3d 1320, 1322 [2008]; *Matter of Bernthon v Mattioli*, 34 AD3d 1165 [2006]), as they were here.

father's] relationship with his child."[4] Simply stated, the record supports the court's conclusion that the mother's "history of exposing her son to alcohol abuse and domestic violence in [the] home indicate that she has been unable[,] for a significant period, to provide her son with a healthy home environment," and, therefore, we agree that it was in the child's best interests to award custody to the father (*see Matter of Edward V. v Crystal W.*, 45 AD3d 1213, 1215 [2007], *lv denied* 10 NY3d 703 [2008]; *compare Dewitt v Sheiness*, 42 AD3d 776, 777 [2007]; *Matter of La Pointe v La Pointe*, 33 AD3d at 1175).

Mercure, J.P., Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.

4. While the Law Guardian advocated at the hearing on behalf of the child's desire to remain with his mother, her brief on appeal supports the father's position to affirm the custody order.