In the Matter of VINCENT A. MEMOLE, JR., Respondent, v SALLY MEMOLE, Appellant. (And Two Other Related Proceedings.) [882 NYS2d 723]—

Garry, J. Appeal from an order of the Family Court of Rensselaer County (Griffin, J.), entered July 11, 2008, which, among other things, granted petitioner's application, in three proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

The parties are the parents of one child, a son whom they adopted immediately following his birth in March 2002. The parties were married in 1996 and resided in Rensselaer County throughout their marriage where petitioner (hereinafter the father) continues to reside. The father was a member of the New York Army National Guard at the time of the marriage. In June 2004, he commenced an active duty status, and from October 2004 until October 2005, he was deployed in Iraq. Shortly before his scheduled return from this deployment, respondent (hereinafter the mother) vacated the family residence without advising the father of her plans. She moved with the parties' son to a town in western Massachusetts, approximately 72 miles away.

Upon his return, the father initiated custody proceedings in Family Court. In May 2006, the parties entered into a stipulated order of custody providing for primary physical custody with the mother and specified parenting time with the father. The stipulated order further provided that the mother would return to reside in New York no later than September 1, 2006, specifically identifying four regional school districts. When the mother failed to relocate as agreed, the father filed a violation petition and the mother filed a modification petition. The mother returned to New York with the child in September 2006, at which time the parties agreed to attempt marriage counseling and withdrew the pending petitions. During this period, the mother initially stayed in a motel room and then moved to a spare room in the marital residence. After three weeks, however, she returned with the child to Massachusetts, allegedly because an individual who had been caring for her pets there was no longer able to do so. Thereafter, although the parties continued to engage in marriage counseling until May 2007, the mother remained in Massachusetts and the child attended a Massachusetts pre-kindergarten program.

In August 2007, the father filed a violation petition alleging that the mother had failed to relocate to New York as directed by the prior order and had refused to allow him to take the child for an agreed-upon vacation. The mother cross-petitioned for modification of the stipulated order to permit her to remain in Massachusetts with the child. By reply, which Family Court treated as a new petition, the father requested physical custody if the mother continued to fail to comply with the stipulated order. In a thorough written decision rendered following a two-day trial conducted in December 2007, Family Court held that it was in the child's best interest to award the father sole custody of the child, with specified terms of parenting time for the mother, including shared holidays and vacations, and provisions for access and transportation. The mother appeals.

It is well settled that an existing custody order shall be modified only upon a sufficient showing of "a change of circumstances indicating a real need to modify an order to further the best interests of the child" (*Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]). In reviewing Family Court's order, this Court accords substantial deference to its factual determinations and assessments of witness credibility (*see Matter of Robinson v Davis*, 58 AD3d 1041, 1042 [2009]; *Matter of Clupper v Clupper*, 56 AD3d 1064, 1066 [2008]). Thus, although this Court has broad authority in custody matters, Family Court's order will be upheld if it is supported by a sound and substantial

basis in the record (*see Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1103 [2007]; *Matter of Eck v Eck*, 33 AD3d 1082, 1084 [2006]).

In Family Court, the underlying change of circumstances was presented without dispute, and the court proceeded to undertake a best interest analysis. Determining what custody arrangement is in a child's best interest requires review of the totality of the circumstances, including " 'maintaining stability for the child[ ], the child['s] wishes, the home environment with each parent, each parent's past performance and relative fitness, each parent's ability to guide and provide for the child['s] overall well-being and the willingness of each to foster a positive relationship between the child[ ] and the other parent' " (*Matter of Grant v Grant*, 47 AD3d at 1028-1029, quoting *Matter of Kilmartin v Kilmartin*, 44 AD3d at 1102).

Family Court did not, as the mother contends, give undue weight to the opinion of a court-appointed psychologist who evaluated both parties and the child and testified that, in his view, the mother lacked the ability to facilitate the child's relationship with his father. The expert opined that this ability was a hallmark of parental adequacy. As the mother points out, the psychologist based his opinion on a single interview with the parties and the child and did not gather additional information by such means as observing their interactions or interviewing other family members or friends. These issues were, however, fully explored by cross-examination during the hearing. Family Court found that the expert's testimony was "totally credible and convincing," and the weight afforded to this evidence will not be disturbed (*see Matter of Wentland v Rousseau*, 59 AD3d 821, 823 [2009]).

Further, Family Court did not base its determination solely on the expert's opinion, but as shown by the decision, gave substantial consideration to the testimony of both parties with regard to the various factors affecting the best interests determination and to the opinion of another expert, retained by the parties, who evaluated the mother's residence and found that it was not inappropriate for the child. Finally, while not conclusive, the position of the child's attorney was in accord with the conclusions reached by Family Court (*see Matter of Armstrong v Crout*, 33 AD3d 1079, 1082 [2006]).

The record does not support the mother's claim that Family Court was biased against the mother or motivated by the desire to punish her for her actions (*see Matter of Shaffer v Winslow*, 17 AD3d 766, 767 [2005]). Contrary to her arguments, Family Court neither overlooked nor misapprehended the fact that she

had been the "hands-on parent throughout most of the [child]'s life," but, instead, used the quoted language in directly addressing this fact as one pertinent factor in its careful analysis of the child's best interest. Family Court noted that the father's opportunity to take a more active role in raising the child had been limited by his work and military obligations and by the mother's removal of the child from the state and, further, that no evidence had been presented to suggest that he was not equally capable of providing for the child's needs. Family Court properly placed greater emphasis and concern upon the mother's failure to value and support the child's relationship with the father (*see Matter of Gunthorpe v Cathey*, 52 AD3d 907, 909 [2008]), as shown by evidence in the record of her active interference with the father's scheduled parenting time on more than one occasion (*see Brodsky v Brodsky*, 267 AD2d 897, 899 [1999]), her "coaching" of the child—then five years old—to make a telephone call to the father expressing reluctance to move to New York (*see Posporelis v Posporelis*, 41 AD3d 986, 990 [2007]), her failure to complete a court-ordered parenting program or to comply with the prior stipulated order relative to returning to the region (*see Matter of Smith v Miller*, 4 AD3d 697, 698-699 [2004]), and her failure to offer evidence of compelling circumstances requiring her relocation of the child to Massachusetts (*see Matter of Tropea v Tropea*, 87 NY2d 727 [1996]).

Finally, the mother contends that Family Court improperly awarded sole custody to the father without explaining why the prior joint custody arrangement could not be continued. To permit effective appellate review, "[a] trial court must state in its decision 'the facts it deems essential' to its determination. While the court need not set forth evidentiary facts, it must state ultimate facts: that is, those facts upon which the rights and liabilities of the parties depend" (*Matter of Jose L.I.*, 46 NY2d 1024, 1025-1026 [1979], quoting CPLR 4213 [b] [citation omitted]). Here, Family Court did not determine, as an ultimate fact, that the parties' relationship has become " 'so acrimonious that they are incapable of putting aside their differences' " (*Webster v Webster*, 283 AD2d 732, 734 [2001], quoting *Matter of Meres v Botsch*, 260 AD2d 757, 759 [1999]). The parties' prior joint custody agreement was modified without any specific findings as to their ability to communicate or to cooperate for the good of their child, and the record does not provide a sound and substantial basis for the conclusion that they were unable to do so (*see Matter of Jemmott v Jemmott*, 249 AD2d 838, 839 [1998], *lv denied* 92 NY2d 809 [1998]). Though the parents experienced serious disagreements and failures of communication, they also

continued to communicate by e-mail and telephone, to cooperate in adjusting the child's visitation schedule, and to agree on such decisions as the child's therapy. The record thus reveals that there is "a modicum of communication and cooperation [and] both parties are fit and loving parents and demonstrate a strong desire to share in the upbringing of their child[ ]" (*Matter of Blanchard v Blanchard*, 304 AD2d 1048, 1049 [2003]). We therefore conclude that joint custody should continue.

Spain, J.P., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by providing that the parties shall have joint legal custody of the child and petitioner shall have primary physical custody of the child, and, as so modified, affirmed.