Rose, J.
Appeal from a judgment of the Supreme Court (Seibert Jr., J.), entered July 19, 2011 in Saratoga County, ordering, among other things, equitable distribution of the parties’ marital property, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 1999 and are the parents of two children, a daughter (born in 2002) and a son (born in 2004). They separated in 2006 and subsequently agreed to joint custody with the wife having primary physical custody and the husband having midweek and alternating weekend visitation. They also reserved the right to relitigate the husband’s midweek visitation after the children started school. The day after the dismissal of the second of the wife’s two unsuccessful divorce actions, the husband commenced this action claiming abandonment and seeking, among other things, primary physical custody of the children. The wife agreed to the ground of abandonment and sought, among other things, sole legal custody. After a bench trial, Supreme Court granted the divorce, continued joint legal custody as well as a slightly reduced schedule of midweek overnight visitation with the husband, and awarded him, among other things, counsel fees in the amount of $15,000. The wife now appeals.*
Where a voluntary agreement of joint custody is entered into, it will not be set aside unless there has been a sufficient change in circumstances showing that a modification will be in the best interests of the children (see Matter of Rosi v Moon, 84 AD3d 1445, 1446 [2011]; Matter of Gaudette v Gaudette, 262 AD2d 804, 805 [1999], lv denied 94 NY2d 790 [1999]). “[I]n evaluating the alleged change, a consensual arrangement is afforded less weight than one ordered by a court after a full hearing” (Matter of Rosi v Moon, 84 AD3d at 1446; see Matter of Whitcomb v Seward, 86 AD3d 741, 742 [2011]; Matter of Eunice G. v Michael G., 85 AD3d 1339, 1340 [2011]). We have found *1104 that a sufficient change in circumstances exists “ ‘where the relationship between joint custodial parents has so deteriorated as to make cooperation for the good of the children impossible’ ” (Matter of Ferguson v Whible, 55 AD3d 988, 990 [2008]; see Matter of Rikard v Matson, 80 AD3d 968, 969-970 [2011], lv denied 16 NY3d 709 [2011]; Matter of Kilmartin v Kilmartin, 44 AD3d 1099, 1101 [2007]). The record here contains sufficient evidence to support a finding that there was a continuing deterioration in the parties’ relationship constituting a significant change in circumstances (see Matter of Timothy N. v Gwendolyn N., 92 AD3d 1155, 1156-1157 [2012]; Matter of Whitcomb v Seward, 86 AD3d at 742; Matter of Eunice G. v Michael G., 85 AD3d at 1339).
Specifically, the parties’ testimony revealed that they rarely speak to each other. According to the wife, interactions with the husband that involved the children were so tense that she sought to avoid them at all costs. In turn, the husband’s distrust of the wife has led him to record his own conversations with the children and then to submit lengthy annotated transcriptions of the recordings in the parties’ ongoing litigation. The record reveals multiple instances where the parties were simply incapable of effectively communicating regarding important aspects of the children’s lives, including their numerous medical issues. Both children have attention deficit disorder, the daughter has depression and a skin pigmentation condition, and the son has juvenile diabetes. They also have emotional issues as a result of the tension between their parents. Both parties agree that the children are “in crisis,” and the court-appointed psychologist described them as being “in emotional turmoil.” Given the level of acrimony and its adverse effect on the children, we find that there has been a sufficient change in circumstances to warrant revisiting the joint custodial arrangement (see Matter of Jennifer G. v Benjamin H., 84 AD3d 1433, 1434 [2011]; Matter of Williams v Williams, 66 AD3d 1149, 1150-1151 [2009]; Matter of Kilmartin v Kilmartin, 44 AD3d at 1101).
Because joint custody is unworkable and not in the children’s best interests here, we must determine which custodial arrangement will best promote those interests. Relevant factors to be weighed include “ ‘maintaining stability in the children’s lives, the quality of respective home environments, the length of time the present custody arrangement has been in place, each parent’s past performance, relative fitness and ability to provide for and guide the children’s intellectual and emotional development, and the effect the award of custody to one parent would have on the children’s relationship with the other parent’ ” *1105 (Matter of Timothy N. v Gwendolyn N., 92 AD3d at 1157, quoting Matter of Opalka v Skinner, 81 AD3d 1005, 1006 [2011]; see Matter of Coley v Sylva, 95 AD3d 1461, 1462 [2012]).
Here, the record reflects that the wife lives in a four-bedroom house within half a mile of the children’s school. The children have many school friends in her neighborhood and have bonded with the children of her boyfriend. The parties agree that the children’s school is well-suited for them and that, in particular, the school nurse is well-versed in handling the son’s diabetes. The wife acknowledged the importance of the children maintaining a relationship with the husband and, while she did not always keep him informed of certain issues, including various health appointments and the daughter’s first communion, she was motivated by not wanting to expose the children to his violent outbursts toward her. The husband lives in a two-bedroom apartment approximately 30 miles from the children’s school. The children share a bedroom and have no friends their own age near the husband’s residence. He acknowledged the need for a larger apartment and a desire to live closer to the children’s school, but he has gone deeply into debt, in part by opposing the wife’s attempts to obtain a divorce, and he has offered no concrete plan to improve his financial or housing situation. On balance, while neither party is without fault in the failure of their joint custodial arrangement, the stability offered by the wife’s household environment, as well as her ability to deal with the children’s health issues and her willingness to foster their relationship with the husband, lead us to conclude that an award of sole custody to her would be in the children’s best interests.
Turning to visitation, the wife argues that there is no sound or substantial basis in the record supporting the continued midweek overnight visitations awarded by Supreme Court. We must agree. As with custody, “[a]n existing visitation order will be modified only if the applicant demonstrates a change in circumstances that reflects a genuine need for the modification so as to ensure the best interests of the child[ren]” (Matter of Susan LL. v Victor LL., 88 AD3d 1116, 1117 [2011], quoting Matter of Braswell v Braswell, 80 AD3d 827, 829 [2011]). As there has been a change in circumstances based upon the development of the children’s various health issues since the 2008 order, we will consider whether elimination of midweek overnight visits is in the children’s best interests. Even without the documented deterioration of the children’s physical and mental health, we would consider the issue in any event because the parties stipulated that the issue of midweek visitation could *1106 be revisited without a showing of a change in circumstances once the children began attending school, and we find the stipulation to be proper under the circumstances here (see e.g. Matter of Studenroth v Phillips, 230 AD2d 247, 249-250 [1997]).
According to the wife, the children’s routine is disrupted by having to spend overnights at the husband’s residence during school. The wife described the children as being anxious, unsettled and constantly questioning as to who was picking them up at school each day, and she testified that it was difficult to schedule them in extracurricular activities. The husband acknowledged that the children were sometimes late to school when staying overnight at his residence and, at times, they went to school without their eyeglasses when in his care. The husband also testified that the children’s behavior was difficult during single-night visits with him. Both the court-appointed psychologist and the attorney for the children advocated for the elimination of midweek overnight visitations in order to provide the children with a stable and predictable environment. In light of these circumstances, we agree that the children’s best interests would be served by eliminating midweek overnight visitations altogether (see Matter of Braswell v Braswell, 80 AD3d at 830-831; Matter of Johnpeer v Williams, 74 AD3d 1584, 1586 [2010]; Matter of Carey v Kimball, 15 AD3d 797, 798-799 [2005]).
Turning to the distribution issues, we conclude that, contrary to the wife’s contention, the record supports Supreme Court’s determination to deny her claim that the husband wrongfully invaded his “Roth IRA” account. The evidence at trial established that the “Roth IRA” account was created by the husband prior to the marriage, and there is no evidence that any marital funds were ever commingled into that account. Thus, we find no basis for the wife’s claim that she was entitled to a credit for the husband’s withdrawals (see Keil v Keil, 85 AD3d 1233, 1235 [2011]; Blay v Blay, 51 AD3d 1189, 1191 [2008]; Shen v Shen, 21 AD3d 1078, 1079 [2005]). As for Supreme Court’s requirement that the wife pay half the amount of the storage unit fees, the record is clear that the storage unit was rented to store the parties’ possessions while they worked out distribution issues and, accordingly, we discern no abuse of discretion in Supreme Court’s determination to equally divide the fees for the unit (see Brzuszkiewicz v Brzuszkiewicz, 28 AD3d 860, 861 [2006], Liepman v Liepman, 279 AD2d 686, 689 [2001]).
We do find, however, that it was an abuse of discretion for Supreme Court to determine that the wife was liable for half of the husband’s tax liabilities in 2007 and 2008. The husband *1107 presented no evidence that the wife was obligated to file joint tax returns in either year, or to split child-care deductions. Nor did the husband establish the amount by which his taxes were increased or the wife’s taxes were decreased by either action. Accordingly, there was insufficient proof that the husband’s individual income tax obligation should be treated as marital debt (see Bayer v Bayer, 80 AD3d 492, 493 [2011]; Wexler v Wexler, 34 AD3d 458, 460 [2006], lv dismissed 8 NY3d 1007 [2007]).
Finally, in determining whether to award counsel fees (see Domestic Relations Law § 237 [a]), “[a] sufficient evidentiary basis must exist for the court to evaluate the respective financial circumstances of the parties and the value of the services rendered” (Yarinsky v Yarinsky, 25 AD3d 1042, 1042 [2006] [internal quotation marks and citations omitted]). Here, the disparity in the parties’ incomes is not significant and the husband offered no retainer agreements or billing statements. Nor did he establish the nature or value of the services rendered. In the absence of any such evidence, Supreme Court erred in awarding counsel fees to the husband (see Schultz v Schultz, 309 AD2d 1020, 1021-1022 [2003]; compare Matter of Buono v Fantacone, 252 AD2d 917, 919 [1998]).
Mercure, J.E, Lahtinen and Garry, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as (1) awarded the parties joint custody of the children, (2) provided plaintiff with physical custody of the children from Wednesday after school until Thursday morning, (3) directed defendant to reimburse plaintiff for a portion of his tax liabilities for 2007 and 2008, and (4) awarded plaintiff counsel fees; defendant is awarded sole custody of the children, the midweek visitation is eliminated, defendant is not responsible for plaintiff’s 2007 and 2008 tax liabilities, and plaintiff is not entitled to counsel fees; and, as so modified, affirmed.

 Although the wife appealed from Supreme Court’s written decision instead of the final judgment entered the same day, we will treat the notice of appeal as valid in the interest of justice (see CPLR 5520 [c]; Hunter v Hunter, 206 AD2d 700, 701 n [1994]).