Stein, J.
Appeal from an order of the Family Court of Albany County (Maney, J.), entered December 20, 2011, which, among other things, partially granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Pursuant to a May 2009 consent order, petitioner (hereinafter the mother) and respondent (hereinafter the father) share joint legal and physical custody of their daughter (born in 2006). The child resides with the mother each week from Sunday at 12:00 p.m. until Wednesday at 4:00 p.m. and with the father the remaining time. Approximately one year after the consent order was issued, the mother filed two modification petitions seeking, among other things, sole legal and physical custody of the child based upon, as pertinent here, an incident at the child’s dance recital, the father’s arrest for driving while intoxicated and aggravated unauthorized operation of a motor vehicle and the generally escalating animosity between the parties. The father thereafter filed two modification petitions, also seeking sole legal and physical custody, as well as a petition alleging that the mother violated the May 2009 custody order by changing the child’s physician without his consent or the court’s prior approval. Following a trial, Family Court found a sufficient change in circumstances to warrant a modification of the previous order and partially granted the mother’s second modification petition by ordering, among other things, that the parties have modified joint legal custody of the child, with the mother having final decision-making authority with regard to the child’s education and the father having final decision-making authority over matters concerning the child’s health. The court continued the *1318 terms of the prior order with respect to the schedule of parenting time.[1] The mother now appeals.
We modify. It is axiomatic that, where a voluntary custodial arrangement exists, it will not be altered absent a sufficient change in circumstances necessitating a modification in order to meet the best interests of the child (see Matter of Youngs v Olsen, 106 AD3d 1161, 1163 [2013]; Nolan v Nolan, 104 AD3d 1102, 1104 [2013]; Matter of Rosi v Moon, 84 AD3d 1445, 1445 [2011]). We have found the existence of such a change in circumstances “where the relationship between joint custodial parents has so deteriorated as to make cooperation for the good of the child[ ] impossible” (Nolan v Nolan, 104 AD3d at 1103-1104 [internal quotation marks and citations omitted]; see Matter of Michael GG. v Melissa HH., 97 AD3d 993 [2012]; Matter of Coley v Sylva, 95 AD3d 1461, 1462 [2012]; Matter of Henderson v MacCarrick, 74 AD3d 1437, 1440 [2010]; Matter of Ferguson v Whible, 55 AD3d 988, 990 [2008]). While we accord deference to Family Court’s credibility assessments (see Matter of Darrow v Darrow, 106 AD3d 1388, 1392 [2013]), a custody determination that is not supported by a sound and substantial basis in the record must be modified (see Matter of King v Barnes, 100 AD3d 1209 [2012]; Matter of Memole v Memole, 63 AD3d 1324, 1327 [2009]).
Here, Family Court rendered a lengthy and thorough decision. However, while that court found that a sufficient change in circumstances existed by virtue of the escalation of the parties’ level of conflict, rendering parenting issues “more complicated,” and noted that the parties were unable or unwilling to alter the pattern of their hostility to protect the child therefrom, the court made only minor modifications to the custodial arrangement which, in our view, did not appropriately recognize that the level of acrimony between the parties had escalated to a point where joint legal custody is unfeasible. Since the May 2009 order, the parties have disagreed on almost every significant aspect of the child’s life, including what doctor would treat the child, where she would attend preschool and what extracurricular activities she would participate in. The parties demonstrated their inability to effectively interact with each other using the most traditional means of communication— email, telephone and text messages — and the court-implemented use of a notebook exchanged between the parties was unsuccessful. The escalation of their acrimony was particularly evident by a dispute that arose out of the child’s participation in a dance recital. After the mother confessed to the father that *1319 she had lied to him about this event — which was scheduled to occur on two evenings during the father’s custodial time — the father decided that the child would not attend. Although the child missed the first night of the recital, the father agreed to bring her to the second performance. However, when he arrived with the child, an altercation occurred between him and the mother — during which the father called the mother a “f . . . ing crack whore” in the child’s presence — which led to police intervention.
With few exceptions, the parties are unable to collectively make decisions concerning the child without conflict, and their acrimony has undoubtedly been detrimental to the child’s well-being. Exchanges of the child have generally led to discord unless the paternal grandmother has intervened, and most of the parties’ communications are heated and volatile. Inasmuch as the parties cannot effectively communicate or cooperate with each other, we conclude that joint legal custody — even in its modified form as directed by Family Court — is not a feasible option for them (see Matter of Youngs v Olsen, 106 AD3d at 1163; Matter of Greene v Robarge, 104 AD3d 1073, 1075 [2013]; Matter of Mahoney v Regan, 100 AD3d 1237, 1237 [2012], lv denied 20 NY3d 859 [2013]; Matter of Spiewak v Ackerman, 88 AD3d 1191, 1192 [2011]).
Accordingly, it is necessary to determine what custodial arrangement is in the child’s best interests (see Matter of Melody M. v Robert M., 103 AD3d 932, 933 [2013]). In fashioning an appropriate arrangement, we note that neither party has been a model parent and each has his or her own considerable shortcomings. Significantly, however, the record establishes that the father’s decision-making ability has been seriously compromised by his animosity towards the mother, as demonstrated by his refusal to allow the child to attend one of her dance recitals. Notably, the father also refused to change the child’s current physician — who was not a pediatrician — despite this physician’s recommendation that the child be treated by a pediatrician.[2] In addition, the father has repeatedly discussed inappropriate subjects and disparaged the mother in front of the child and refuses to participate in co-parenting counseling with the mother.
While we do not condone some of the mother’s conduct toward the father or her disregard of a court order on at least one occasion, inasmuch as the father has demonstrated his inability to place the child’s needs ahead of his contempt for the mother, we conclude that the child’s interests would be best served by *1320 awarding sole legal custody to the mother. Therefore, we reverse so much of Family Court’s order that granted the parties modified joint legal custody and granted the father decision-making authority over all major health-related decisions affecting the child.
Nonetheless, we see no reason why the father should not continue to have unrestricted access to all of the child’s medical and educational records. To that end, the mother shall keep the father promptly informed regarding all significant matters concerning the child including, but not limited to, the child’s health, education and extracurricular activities, and the father shall be permitted to attend all appointments, meetings and activities regarding the child. Further, the mother shall not unreasonably schedule such appointments or activities during the father’s parenting time. In addition, if a medical emergency arises while the child is in the father’s care, he shall arrange for her medical care and immediately inform the mother of the details of that emergency.
Turning to the mother’s application for primary physical custody, we reject her challenge to that part of Family Court’s order that continued the existing parenting schedule. That schedule reflects that the child has a loving relationship with both parties and, although not determinative, we note that the Attorney for the Child advocates for a continuation thereof. Neither parent is especially well-suited to undertake sole physical custody and, as Family Court found, there was no evidence that the residential arrangement was not meeting the child’s needs at the time of trial. Thus, inasmuch as Family Court’s order denying the mother’s petition for primary physical custody was supported by a sound and substantial basis in the record, we will not disturb it (see Matter of Gordon v Richards, 103 AD3d 929, 930-931 [2013]).
Peters, P.J., Lahtinen and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) awarded the parties modified joint legal custody of the child, (2) granted respondent decision-making authority over all major health-related decisions regarding the child, (3) ordered that decisions regarding extracurricular activities for the child be jointly made by the parties, and (4) ordered that any other issues not specifically addressed would be decided jointly by the parents; petitioner is awarded sole legal custody of the child; and, as so modified, affirmed.

. Family Court dismissed the mother’s first modification petition as moot and denied the father’s modification and violation petitions.

. In our view, this renders Family Court’s award to the father of medical decision-making authority particularly troublesome.