Peters, P.J.
Appeal from an order of the Supreme Court (Campbell, J.), entered May 3, 2012 in Cortland County, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of Alexander C. (born in 2003) and Andrew C. (born in 2007). In August 2010, the parties stipulated to an order granting them joint legal and physical custody of the children, with physical custody alternating weekly and the mother having final decision-making authority. Over the next six months, a flurry of violation and family offense petitions were filed by the parties and each commenced a proceeding seeking sole custody of the children. Following a fact-finding hearing conducted over the course of several days, as well as two Lincoln hearings with Alexander, Supreme Court granted the mother sole legal and physical custody and provided alternate weekend visitation to the father. Both the father and the attorney for the children appeal.
As a preliminary matter, this appeal has not been rendered moot by a subsequent Family Court order resolving a violation petition filed by the father. That order, which was entered on consent, made minor changes to the visitation schedule, but otherwise left intact the provisions of the order on appeal relating to custody. As such, we find no basis to conclude that the father relinquished his right to pursue this appeal (see Hughes v *1033 Gallup-Hughes, 90 AD3d 1087, 1088 [2011]; Matter of Wayman v Ramos, 88 AD3d 1237, 1238 [2011], lv dismissed 18 NY3d 868 [2012] ; Matter of Claflin v Giamporcaro, 75 AD3d 778, 779 [2010], lv denied 15 NY3d 710 [2010]; Matter of Siler v Wright, 64 AD3d 926, 927-928 [2009]).
Addressing the merits, an existing custody order may be modified upon a showing that there has been a change in circumstances reflecting a real need for change so as to insure the continued best interests of the children (see Matter of Breitenstein v Stone, 112 AD3d 1157, 1157 [2013]; Matter of Deyo v Bagnato, 107 AD3d 1317, 1318 [2013], lv denied 22 NY3d 851 [2013] ). Here, the record overwhelmingly establishes that the parents are unable to cooperate or effectively communicate with one another for the sake of their children. They have disagreed on nearly every significant aspect of the children’s lives and their relationship has deteriorated to the point that they are hostile, embattled and mistrustful of one another, which has resulted in frequent police intervention. Further, testimony established that the weekly change of custody was causing Alexander anxiety and was otherwise negatively impacting the children. Given these circumstances, Supreme Court properly concluded that joint custody is not a viable option for these parents (see Matter of Youngs v Olsen, 106 AD3d 1161, 1163 [2013]; Matter of Greene v Robarge, 104 AD3d 1073, 1075 [2013]; Matter of Coley v Sylva, 95 AD3d 1461, 1461-1462 [2012]).
Our analysis thus turns to what custodial arrangement would promote the children’s best interests. “Relevant factors to be weighed include maintaining stability in the children’s lives, the quality of respective home environments, the length of time the present custody arrangement has been in place, each parent’s past performance, relative fitness and ability to provide for and guide the children’s intellectual and emotional development, and the effect the award of custody to one parent would have on the children’s relationship with the other parent” (Nolan v Nolan, 104 AD3d 1102, 1104 [2013] [internal quotation marks and citations omitted]; see Matter of Clouse v Clouse, 110 AD3d 1181, 1183 [2013], lv denied 22 NY3d 858 [2014]). We defer to Supreme Court’s factual findings and credibility assessments and will not disturb its custody determination where it is supported by a sound and substantial basis in the record (see Matter of King v Barnes, 100 AD3d 1209, 1210 [2012]; Helm v Helm, 92 AD3d 1164, 1166 [2012]; Matter of Williams v Williams, 66 AD3d 1149, 1151 [2009]).
As the record reveals and Supreme Court aptly observed in its lengthy decision, both the mother and the father are caring *1034 and concerned parents, each with demonstrated strengths and weaknesses. At the time of the hearing, the mother had recently lost her job due to violation of her employer’s Internet usage policy. She acknowledged that she has difficulty controlling her temper and testified that both she and the father inappropriately used corporal punishment in disciplining the children in the past. Although the father made multiple allegations that such improper corporal punishment has continued in the mother’s home and commenced a child protective investigation when he found bruises on Andrew’s legs, these allegations were deemed unfounded by Child Protective Services, and Supreme Court found that neither party continues to use any sort of inappropriate corporal punishment. The mother has a history of calling the police to investigate somewhat innocuous and explainable injuries on the boys, such as scratches resulting from pets, and appears to be unaware of the negative impact that this may have upon the children. Further, the mother exercised questionable judgment when, despite staying at a domestic violence safe house with the children following the parties’ most recent separation, she continued to communicate with and see the father — and even engaged in sexual activities with him — but would not allow him to see the children.
On the other hand, Supreme Court found that it was the mother alone who took a proactive role in the children’s medical care and mental health needs, whereas the father was hesitant, or even averse, to engaging in services. Shortly after the commencement of the joint custody arrangement, the mother initiated counseling for Alexander because he was exhibiting problems in school, acting out aggressively and had expressed suicidal ideations. While the mother was supportive of the therapy and followed through with the treatment recommendations, the father disapproved of both the counselor and “the process” in general. As a result, the child missed appointments that were scheduled during the father’s visitation weeks and the father ultimately instructed the mother that appointments were not to be made for Alexander during his parenting time. Furthermore, despite expressed and valid concerns by the counselor regarding severe delays in Andrew’s speech development, the father disagreed with the professional recommendation that the child be immediately evaluated for early intervention services. In contrast, the mother promptly followed through with the recommendation and obtained speech therapy for Andrew, who, as both parties now agree, has shown considerable improvement.
The record also amply supports Supreme Court’s finding that *1035 the father engaged in conduct that served to alienate the mother from the children. The mother testified that the father would often berate her and call her derogatory names in the presence of the children, and he continued to denigrate the mother during the fact-finding hearing by repeatedly referring to her as a liar and manipulator. Moreover, the father refused to inform the mother of the day care the children were attending during his parenting time, and testimony established that it was Alexander’s understanding that details regarding his day care were to be kept secret from his mother. The father also violated court orders, on one occasion refusing to return the children to the mother during her parenting week even after he was served with an order to show cause directing him to do so. Additionally, on more than one instance, the father left the state with the children to visit a female acquaintance without notifying the mother that he was doing so, as required by the order then in effect.
Notably, the record reflects that the father not only discussed court proceedings with Alexander as well as with others in his presence, but also brought the children to his attorney’s office— without their counsel present — in order to be prepped with respect to these proceedings. Supreme Court found, and we agree, that the father’s conduct in that regard “demonstrate[d] a remarkable lack of judgment and insight into the enormous conflict this inflicts on the children” — especially Alexander who is being treated for anxiety directly related to the parties’ marital discord — and reflects his willingness to place his needs ahead of his children. Furthermore, due to this potential for manipulation, the court understandably gave very little weight to Alexander’s testimony and the expressed wishes of the children (see Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; Matter of Goodfriend v Devletsah-Goodfriend, 29 AD3d 1041, 1042 [2006]).
Clearly, this was a difficult case. Supreme Court appropriately weighed and considered the applicable factors, and ultimately ruled that the facts tipped in favor of the mother. Contrary to the father’s assertion that Supreme Court’s findings were inaccurate and showed bias, the record reveals that the court’s findings rest upon its assessment of the credibility of the witnesses and the character, temperament and sincerity of the parents (see Matter of Michelle V. v Brandon V., 110 AD3d 1319, 1324-1325 [2013]; Matter of Memole v Memole, 63 AD3d 1324, 1326-1327 [2009]). Such credibility determinations necessarily carry weight — particularly in a close case such as this — and we find no basis in the record to disturb them (see Matter of Pizzo v *1036 Pizzo, 94 AD3d 1351, 1352-1353 [2012]; Matter of Meier v Meier, 79 AD3d 1295, 1296 [2010]). Thus, notwithstanding the contrary position of the attorney for the children (see Matter of Hitchcock v Kilts, 4 AD3d 652, 654 [2004]; Matter of McGivney v Wright, 298 AD2d 642, 644 [2002], lv denied 99 NY2d 508 [2003]; Matter of Perry v Perry, 194 AD2d 837, 838 [1993]), we find sufficient support in the record for Supreme Court’s decision that an award of sole legal and physical custody to the mother is in the children’s best interests.
Stein, Rose and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.