Matter of Brady J.S. v Darla A.B. (2022 NY Slip Op 04858)

Matter of Brady J.S. v Darla A.B.

2022 NY Slip Op 04858

Decided on August 4, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 4, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., NEMOYER, CURRAN, WINSLOW, AND BANNISTER, JJ.

493 CAF 21-00093

[*1]IN THE MATTER OF BRADY J.S., PETITIONER-RESPONDENT,
v
DARLA A.B., TIMOTHY B., RESPONDENTS, AND JEANETTE W.B., RESPONDENT-APPELLANT.
IN THE MATTER OF DARLA A.B. AND TIMOTHY B., PETITIONERS-RESPONDENTS,
BRADY J.S., RESPONDENT-RESPONDENT, AND JEANETTE W.B., RESPONDENT-APPELLANT. PAUL B. WATKINS, ESQ., ATTORNEY FOR THE CHILD, APPELLANT. 

MARK D. FUNK, CONFLICT DEFENDER, ROCHESTER (CAROLYN WALTHER OF COUNSEL), FOR RESPONDENT-APPELLANT.
PAUL B. WATKINS, FAIRPORT, ATTORNEY FOR THE CHILD, APPELLANT PRO SE. 
MICHAEL STEINBERG, ROCHESTER, FOR PETITIONER-RESPONDENT AND RESPONDENT-RESPONDENT BRADY J.S. 

 Appeals from an order of the Family Court, Monroe County (Dandrea L. Ruhlmann, J.), entered December 14, 2020 in a proceeding pursuant to Family Court Act article 6. The order, inter alia, granted joint legal custody of the subject child to Darla A.B., Timothy B., Jeanette W.B. and Brady J.S. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Family Court Act article 6, respondent-respondent mother and the Attorney for the Child (AFC) appeal from an order that, among other things, determined that petitioner-respondent father established a change in circumstances and granted the mother, respondents-petitioners maternal grandparents (grandparents), and the father joint legal custody of the subject child, assigned the grandparents and the father various "zones of influence," and awarded the grandparents and the father shared physical residence, with the child splitting her time equally between the two residences.
It is undisputed that the father, at the age of 20, began a sexual relationship with the mother when she was only 15 and that the child was born when the mother was 17. At the time of the child's birth, the father was in jail on a petit larceny conviction. The father was released shortly after the child was born and was thereafter convicted upon a plea of guilty of rape in the third degree for having sexual intercourse with the mother before she turned 17 (Penal Law § 130.25 [2]). Although the father was originally sentenced to 10 years of probation, he was resentenced to two years in prison after he violated the terms of his probation in an incident involving the mother. During his incarceration, the father entered into a consent order (2009 [*2]order) awarding the mother custody of the child.
Following his release from prison, the father filed a petition seeking modification of the 2009 order, and the grandparents thereafter filed a custody petition. Ultimately, the father, the mother, and the grandparents agreed that the mother and the grandparents would have joint custody of the child, with the grandparents having primary physical residence. A consent order to that effect was entered in 2013 (2013 order) pursuant to which the father's visitation was to "increase in time and frequency" and to transition to unsupervised visitation over the course of the calendar year.
In 2015, after the father secured gainful employment, purchased a home, and began to maintain a sober lifestyle, he petitioned for custody of the child, noting that the grandparents had not abided by the provisions of the 2013 order concerning increased, unsupervised visitation. He later amended the petition to seek the alternative relief of increased visitation with the child. Relying on the father's past conviction regarding the statutory rape of their daughter, the grandparents refused to provide any increase in visitation to the father, whom they referred to as "a convicted rapist and a level one pedophile sex offender." Nevertheless, the AFC at the time stated that the child "was very happy and comfortable and safe with her father"; she "love[d]" her father; and, although the father never said anything negative about the grandparents, she did hear her grandparents say "negative things about her dad." The AFC added that the child wanted to spend more time, including overnights, with her father but she knew that, if she asked her grandparents, "the answer will just absolutely be no."
After noting that the father's actions were well in the past, the AFC concluded that "[t]here comes a time six years later that we all have to take personal responsibility for our own actions and our past actions. And this little child wants to love everybody. And I don't think she is being unreasonable wanting to love everybody."
Ultimately, the matter proceeded to trial on the father's amended petition. As a preliminary matter, we reject the position taken by the father that neither the mother nor the AFC has standing to appeal. The mother is aggrieved by the order on appeal inasmuch as she had joint custody of the child with the grandparents and, through counsel, she opposed the father's amended petition, which was granted, in part, by the order on appeal (see CPLR 5511; Matter of Johnson v Johnson, 192 AD3d 1670, 1672 [4th Dept 2021], lv denied 37 NY3d 905 [2021]; cf. Matter of Chase v Chase, 181 AD3d 1323, 1324 [4th Dept 2020], lv dismissed in part and denied in part 35 NY3d 996 [2020]). A person is aggrieved within the meaning of CPLR 5511 " 'when he or she asks for relief but that relief is denied in whole or in part,' or, when someone 'asks for relief against him or her, which the person opposes, and the relief is granted in whole or in part' " (Matter of Michael O.F. [Fausat O.], 101 AD3d 1121, 1122 [2d Dept 2012]; see Matter of Valenson v Kenyon, 80 AD3d 799, 799 [3d Dept 2011]). Here, the mother, as a joint custodian of the child, had "a direct interest in the matter at issue that [was] affected by the result, and the adjudication [had] binding force against [her] rights, person or property" (Valenson, 80 AD3d at 799; see Johnson, 192 AD3d at 1672). Based on our determination regarding the mother's standing, we conclude that the AFC also had standing to appeal the order (see Matter of Newton v McFarlane, 174 AD3d 67, 71-74 [2d Dept 2019]; cf. Matter of Lawrence v Lawrence, 151 AD3d 1879, 1879 [4th Dept 2017]).
The mother and the AFC contend that remittal is required because Family Court failed to conduct a scheduled Lincoln hearing. We reject that contention. It is undisputed that the hearing did not occur as a result of a snowstorm and, shortly thereafter, a global pandemic. Assuming, arguendo, that the contentions of the mother and the AFC are not waived and are preserved for our review (see generally Matter of Pfalzer v Pfalzer, 150 AD3d 1705, 1706 [4th Dept 2017], lv denied 29 NY3d 918 [2017]), we conclude that the failure to conduct a Lincoln hearing does not require remittal under the circumstances of this case.
A Lincoln hearing, "though often preferable, is not mandatory, and the determination is addressed to [the court's] discretion" (Matter of Jessica B. v Robert B., 104 AD3d 1077, 1078 [3d Dept 2013]). "In determining whether such a hearing is warranted, the court must determine whether the in camera testimony of the child 'will on the whole benefit the child by obtaining for the Judge significant pieces of information he [or she] needs to make the soundest possible decision' " (Matter of Walters v Francisco, 63 AD3d 1610, 1611 [4th Dept 2009], quoting [*3]Matter of Lincoln v Lincoln, 24 NY2d 270, 272 [1969]; see Bielli v Bielli, 60 AD3d 1487, 1487 [4th Dept 2009], lv dismissed 12 NY3d 896 [2009]).
Here, the court was able to discern the child's wishes as a result of the position expressed by the AFC (see Matter of Muriel v Muriel, 179 AD3d 1529, 1530-1531 [4th Dept 2020], lv denied 35 NY3d 908 [2020]; cf. Matter of Yeager v Yeager, 110 AD3d 1207, 1209-1210 [3d Dept 2013]). Moreover, there are indications in the record that information provided by the child might have been tainted by the obvious disdain the grandparents regularly expressed regarding the father (see Muriel, 179 AD3d at 1530; see generally Matter of Krier v Krier, 178 AD3d 1372, 1373 [4th Dept 2019]).
Finally, we conclude, contrary to the mother's and the AFC's contentions, that there is a sound and substantial basis for the court's determination to award the father joint custody with the mother and grandparents and shared physical residence with the grandparents, with zones of influence for the father and grandparents (see generally Graves v Huff [appeal No. 2], 169 AD3d 1476, 1476 [4th Dept 2019]). Although the father has a troubled past and his relationship with the mother began under illegal circumstances, he and the mother have had a long-standing, on-and-off romantic relationship that has spanned over a decade and continued well into the mother's adulthood. The father admitted his prior mistakes without excuses or hesitancy, and he testified that he was trying, to the best of his ability, to make amends for the "ramifications [of] a decision [that] he made as a young man," which were far greater than he could have ever expected. The father has paid for his crimes and turned his life around, obtaining gainful employment and purchasing his own home. He has demonstrated a consistent desire to parent his child, who has never been harmed in his presence and desires to spend time with him.
The evidence at the hearing established that, as the father became more successful in life and more desirous of a relationship with his child, the grandparents became more restrictive and more hostile to the idea of any relationship between the father and the child. The grandparents testified that they saw no distinction between forcible rape and statutory rape, even when the parties continued the relationship for more than a decade. According to the grandmother, "[r]ape is rape." Moreover, without citing evidence to support their fear, the grandparents opined that the father was victimizing and grooming the child for future sexual actions with the father. Based on their steadfast (and unreasonable) belief that there should be no contact between the father and the child, the grandparents, in violation of a court order, denied the father visitation with the child for several months. Visitation resumed only after the father obtained an additional court order.
Considering the factors relevant to a determination of a child's best interests (see Fox v Fox, 177 AD2d 209, 210 [4th Dept 1992]), as well as the " 'concerted effort by [the grandparents] to interfere with the [father's] contact with the child' " (Matter of Cramer v Cramer, 143 AD3d 1264, 1264 [4th Dept 2016], lv denied 28 NY3d 913 [2017]), we conclude that there is a sound and substantial basis for the determination that an award of joint custody to the mother, the father, and the grandparents, with shared physical residence between the father and the grandparents and zones of interest for the father and the grandparents, is in the child's best interests, and we therefore decline to disturb that determination (see Krier, 178 AD3d at 1373-1374; Matter of Thayer v Ennis, 292 AD2d 824, 825 [4th Dept 2002]).
Entered: August 4, 2022
Ann Dillon Flynn
Clerk of the Court