Matter of Werner v Kenney

2026 NY Slip Op 02754

May 1, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

IN THE MATTER OF TAMRA J. WERNER, PETITIONER-APPELLANT,

v

KRAIG H. KENNEY, RESPONDENT-RESPONDENT. SCOTT A. OTIS, ESQ., ATTORNEY FOR THE CHILD, APPELLANT. (APPEAL NO. 1.)

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on May 1, 2026

225 CAF 24-02028

Present: Lindley, J.P., Curran, Ogden, Delconte, And Hannah, JJ.

INCLIMA LAW FIRM, PLLC, ROCHESTER (CHARLES P. INCLIMA OF COUNSEL), FOR PETITIONER-APPELLANT.

SCOTT A. OTIS, WATERTOWN, ATTORNEY FOR THE CHILD, APPELLANT PRO SE.

Appeals from an order of the Family Court, Monroe County (Stacey Romeo, J.), entered November 7, 2024, in a proceeding pursuant to Family Court Act article 6. The order, inter alia, denied the petition for sole custody with respect to the subject child, found petitioner in civil contempt, and imposed a sanction.

[*1]

It is hereby ORDERED that the order so appealed from is unanimously modified on the law by vacating the finding of contempt and the imposition of a sanction upon the contempt and as modified the order is affirmed without costs.

Memorandum: Petitioner mother and respondent father are the parents of a child born in 2009. Although the parties had initially agreed to joint custody of the child, they both moved to modify the judgment of divorce, which incorporated the custody agreement. Supreme Court (Kocher, A.J.) ultimately awarded the father sole custody of the child, and we affirmed that order (Werner v Kenney, 142 AD3d 1351 [4th Dept 2016]). In the years that followed, the mother filed numerous petitions to modify custody, all of which were denied without a hearing. On appeal from one such order of Family Court (Dennis, J.), we again affirmed (Matter of Werner v Kenney, 191 AD3d 1256 [4th Dept 2021]).

The instant appeals arise from the mother's latest petition to modify custody of the child. In appeal No. 1, the mother and the Attorney for the Child (AFC) appeal from an order of Family Court (Romeo, J.) that, inter alia, denied the mother's petition for sole custody and effectively granted the father's cross-claim for civil contempt. In appeal No. 2, the mother appeals from an order of the same court fining the mother $250 and ordering her to pay the father $18,000 in attorneys' fees as a sanction for civil contempt.

In appeal No. 1, although we agree with the mother and the AFC that the court erred in finding the mother in contempt, we conclude that the court did not err with respect to custody. At the hearing on the petition, the mother introduced in evidence a transcript of ex parte testimony that the child had given in a Family Court Act article 8 proceeding brought by the mother against the father that had been dismissed. In that transcript, the child testified about an argument that he had with his father on March 6, 2023 (March 6 incident). We agree with the mother that the court erred in disregarding that evidence. Although the child's testimony at the article 8 hearing constituted inadmissible hearsay inasmuch as it did not meet the requirements of [*2]CPLR 4517 and did not fall under any other exception to the hearsay rule, the father's attorney stated that she had "[n]o objection" to its admission. "[I]n civil cases, inadmissible hearsay admitted without objection may be considered and given [such] probative value as, under the circumstances, it may possess" (Costor v AT & T Servs., Inc., 187 AD3d 1135, 1136-1137 [2d Dept 2020] [internal quotation marks omitted]; see Matter of Emily M. [Joyce G.], 245 AD3d 943, 945 [2d Dept 2026]). The court thus erred in refusing to consider the evidence. We nevertheless conclude that the error is harmless.

The child participated in a Lincoln hearing, and the father admitted the facts expressly discussed by the child in the earlier ex parte testimony. During the March 6 incident, the father and the child had a heated argument, with both using profanity and the father, who was several feet away from the child, punching a pillow. The father did not touch or threaten the child. Inasmuch as the facts regarding the March 6 incident were not in dispute and the child was afforded the ability to present his testimony to the court in the Lincoln hearing, no substantial right of a party was prejudiced by the court's refusal to consider the child's testimony from the article 8 hearing, and, therefore, reversal is not warranted on that ground (see CPLR 2002; Senycia v Vosseler, 217 AD3d 1520, 1522 [4th Dept 2023]; Matter of Beth M. v Susan T., 81 AD3d 1396, 1396-1397 [4th Dept 2011]).

The mother further contends that the court erred in refusing to admit additional hearsay statements of the child based on her contention that those statements related to neglect or abuse (see Family Ct Act § 1012). We reject that contention. It is true that out-of-court statements of a child, "if corroborated, are admissible in custody and visitation proceedings that are 'based in part upon allegations of abuse or neglect' " (Matter of Montalbano v Babcock, 155 AD3d 1636, 1637 [4th Dept 2017], lv denied 31 NY3d 912 [2018]; see Family Ct Act § 1046 [a] [vi]; Matter of Cobane v Cobane, 57 AD3d 1320, 1321 [3d Dept 2008], lv denied 12 NY3d 706 [2009]). Here, however, there were no allegations or evidence of neglect or abuse, i.e., no allegations or evidence that the father failed "to exercise a minimum degree of care" (§ 1012 [f] [i]) or abused the child (see § 1012 [e]).

The father and his teenage son had some disagreements regarding the child quitting certain activities and refusing to go forward with a religious ceremony, and the father used profanities and punched a pillow. Under the circumstances of this case, the evidence of such conduct by the father does not constitute an allegation of failure to exercise a minimum degree of care or of abuse. Notably, Family Court Act § 1012 (e) requires, in order for there to be a finding of abuse, that any emotional harm to a child be caused either by "physical injury" or by "a substantial risk of physical injury" (§ 1012 [e] [i], [ii]).

We also reject the mother's contention that the court's credibility determinations are not supported by the record. The court had a " 'superior ability to evaluate the credibility of the testifying witnesses' " (Matter of Cross v Cross, 235 AD3d 1264, 1266 [4th Dept 2025], lv denied 44 NY3d 902 [2025]; see Matter of Torres v Burchell, 228 AD3d 1303, 1303-1304 [4th Dept 2024], lv denied 42 NY3d 908 [2024]), and we see "no basis to disturb the court's credibility assessments and factual findings" (Matter of Beman v Hand, 243 AD3d 1293, 1294 [4th Dept 2025]; see Matter of Wasicki v Wilber, 239 AD3d 1487, 1488 [4th Dept 2025]).

Contrary to the contentions of the mother and the AFC, the court's determination to deny the mother's petition seeking sole custody is supported by a sound and substantial basis in the record. "The court's determination in a custody matter is entitled to great deference and will not be disturbed where . . . it is based on a careful weighing of appropriate factors . . . Those factors include: (1) the continuity and stability of the existing custodial arrangement, including the relative fitness of the parents and the length of time the present custodial arrangement has continued; (2) the relative quality of each parent's home environment; (3) each parent's ability to provide for the child's emotional and intellectual development; (4) the parents' relative financial status and ability to provide for the child; (5) the child's wishes; and (6) the need of the child to live with siblings" (Matter of Krier v Krier, 178 AD3d 1372, 1373 [4th Dept 2019] [internal quotation marks omitted]; see Matter of Torres v Pfeiffer, 235 AD3d 1261, 1262 [4th Dept 2025]).

Here, almost all of the relevant custody factors weigh in favor of the father. The only factor favoring the mother is the child's express wishes, but that factor should be discounted [*3]considering the significant evidence of parental alienation by the mother, as established in earlier litigation (see Werner, 142 AD3d at 1352). The evidence at the most recent hearing confirms that the mother has engaged in an unrelenting campaign of alienation against the father. For example, the mother made numerous unfounded allegations of abuse of the child by the father, inflamed the child's fear that the father was going to take away the child's dog by taking the child to various shelters to look for the dog, even though the dog remained safely in the father's custody, and by other means encouraged the child's disregard for the father. Indeed, inasmuch as the father never assaulted the child or threatened him with violence, the only explanation supported by the record for the child's refusal to see his father is that the mother alienated him against the father.

"Although the express wishes of [a child] are entitled to great weight, the [c]ourt is . . . not required to abide by the wishes of a child to the exclusion of other factors in the best interests analysis" (Matter of Biernbaum v Burdick, 162 AD3d 1664, 1665 [4th Dept 2018] [internal quotation marks omitted]). The evidence in this case establishes that "the child was so profoundly influenced by his mother" that his position on where he would like to reside was "not entitled to great weight" (Krier, 178 AD3d at 1373; see Matter of Brady J.S. v Darla A.B., 208 AD3d 1023, 1026 [4th Dept 2022], lv denied 39 NY3d 904 [2022]; Matter of Marino v Marino, 90 AD3d 1694, 1695-1696 [4th Dept 2011]).

Moreover, it is well settled that "[a] concerted effort by one parent to interfere with the other parent's contact with the child is so inimical to the best interests of the child . . . as to, per se, raise a strong probability that [the interfering parent] is unfit to act as custodial parent" (Marino, 90 AD3d at 1695). As noted, the record is replete with examples of the mother's prolonged and concerted effort to alienate the child from the father. We conclude that the court's order in appeal No. 1, insofar as it concerns issues of custody, "resulted from a careful weighing of [the] appropriate factors" (Matter of Fowler v Rothman, 198 AD3d 1374, 1375 [4th Dept 2021], lv dismissed 38 NY3d 995 [2022] [internal quotation marks omitted]) and is supported by a sound and substantial basis in the record and should not be disturbed (see e.g. Wasicki, 239 AD3d at 1488; cf. Matter of Memole v Memole, 63 AD3d 1324, 1327-1328 [3d Dept 2009]). Based on our determination with respect to custody, we also reject as academic the mother's contention concerning child support.

In appeal Nos. 1 and 2, we conclude that the court erred in holding the mother in contempt and in imposing sanctions for such contempt. Section 756 of the Judiciary Law requires certain notices and warnings to be on the face of a contempt application (see Rennert v Rennert, 192 AD3d 1513, 1515 [4th Dept 2021]; Tuchrello v Tuchrello, 233 AD2d 917, 917-918 [4th Dept 1996]; Barreca v Barreca, 77 AD2d 793, 793 [4th Dept 1980]). "It is well settled that the failure to include the notice or the warning language of Judiciary Law § 756 constitutes a jurisdictional defect" (Rennert, 192 AD3d at 1515; see Barreca, 77 AD2d at 793). Here, the father first sought civil contempt against the mother in a cross-claim, but that cross-claim was not a proper procedural method for such relief (see Judiciary Law § 756). In any event, the cross-claim failed to comply with Judiciary Law § 756 inasmuch as it did not contain the required notice and warning (see Matter of P & N Tiffany Props. v Williams, 302 AD2d 466, 466-467 [2d Dept 2003], lv denied 100 NY2d 512 [2003]; Barreca, 77 AD2d at 793).

On the eve of trial, the father filed an order to show cause with the necessary contempt warnings (see Family Ct Act § 156; Judiciary Law §§ 753, 756), but the court did not sign the order to show cause, which was therefore never served upon the mother. Despite the procedural failings, the court, at the end of the hearing, asked the attorneys to address the contempt issues in their summations and found the mother in contempt for failing to comply with the order awarding the father sole custody of the child. We conclude that the court lacked jurisdiction to find the mother in contempt (see Rennert, 192 AD3d at 1515; Barreca, 77 AD2d at 793).

We thus modify the order in appeal No. 1 by vacating the finding of contempt and the imposition of a sanction upon that contempt and reverse the order in appeal No. 2.

Entered: May 1, 2026

Ann Dillon Flynn

Clerk of the Court